OPINION
Defendant-appellant, James R. Bowling, appeals his conviction in the Madison County Court of Common Pleas for aggravated murder.
At the time of his offense, appellant was an inmate at the Madison Correctional Institution ("MCI"). On April 25, 1996, appellant and five other inmates, John Stojetz, Jerry Bishop, David Lovejoy, William Vandersommen, and Philip Weirzack — all of whom were members of the Aryan Brotherhood, a white-separatist gang led by Stojetz — cornered Damico Watkins, a black juvenile inmate, inside Adams A, the juvenile cell block. The Aryans chased Watkins throughout Adams A, stabbing him to death.
The Aryans were separately indicted and tried for the murder. Lovejoy, Vandersommen, and Weirzack pled guilty to the charges. Stojetz was tried and convicted of aggravated murder and sentenced to death. Bishop was tried and convicted of murder and sentenced to fifteen years to life imprisonment. Both sentences were upheld upon appeal. State v. Stojetz (1998), 84 Ohio St.3d 452, rehearing/reconsideration denied (1999), 85 Ohio St.3d 1448; State v. Bishop (Oct. 5, 1998), Madison App. No. CA97-07-032, unreported, appeal dismissed (1999), 84 Ohio St.3d 1503, appeal dismissed,86 Ohio St.3d 1438. The details of the murder are set forth in the above opinions, and we will not repeat them except as necessary.
On June 11, 1997, appellant was indicted for aggravated murder, the purposeful killing of Damico Watkins with prior calculation and design, a violation of R.C. 2903.01. Included in the indictment was a capital punishment specification pursuant to R.C. 2929.04(A)(4), alleging that appellant was an inmate in an Ohio corrections facility at the time of the attack. Counsel was appointed to represent appellant.
In a pre-trial motion, appellant sought to suppress a photo identification of himself made by Kisun Wilson, an inmate who was housed in Adams A at the time of the attack. Appellant contended that the identification had been unduly suggestive. After hearing arguments, the trial court found that the identification was unduly suggestive and excluded the identification, but allowed any identification or description of appellant made prior to the photo line-up.
Trial commenced on August 10, 1998. The state established three motives for the attack. Watkins had been involved in an attack upon a young white inmate, and the Aryans sought revenge for the attack. Also, the group sought to intimidate the prison administration and black inmates at MCI. Finally, the Aryans wanted transfers to the higher security Southern Ohio Correctional Facility at Lucasville, Ohio, a more segregated environment. An attack such as this one could result in such a transfer.
Numerous witnesses testified as to the circumstances of the attack and appellant's participation in the attack. Corrections officers and inmates testified that appellant was seen with one of six "shanks," or homemade knives, used in the attack. Corrections Officer Michael Browning, the guard on duty at Adams A the day of the attack, testified that all of the Aryans threatened him and that they all possessed shanks. Captain Thomas Saunders testified that he recorded portions of the attack on videotape through an entry door leading into Adams A. Segments of the videotape showed appellant patrolling the lower level of Adams A, shank in hand. The videotape was played for the jury.
Corrections Officer Russell Lee Parrish testified that he attempted to enter Adams A through a back entryway, but he was confronted by appellant. Appellant began yelling at Parrish and brandishing his shank. Appellant then approached Parrish. Appellant was joined by Stojetz, and once Parrish fled out of the doorway they pushed desks and chairs against the door to block it.
Wilson testified that he had been able to see part of the attack on Watkins. He testified that he witnessed a bald man with a mustache, some chin hair, and a muscular build stab Watkins. This description generally matched appellant. Weirzack, one of the other Aryans, testified that appellant stabbed Watkins on the lower level during the chase and that appellant encouraged Bishop's attack upon Watkins at the end of the chase.
Other corrections officers testified that appellant had been a participant in collective bragging by the Aryans upon their surrender. Deputy Warden Mark Saunders, Captain James E. Trainer, and Sergeant Martha Crabtree witnessed this boasting. Trooper Brian Kirk, an investigator with the Ohio State Highway Patrol ("OSHP"), testified that when appellant's cell was searched, after the attack, all of appellant's belongings had been packed as if he was expecting to be transferred. Numerous corrections officers testified that appellant was a known member of the Aryan Brotherhood, and that he never attempted to stop or denounce the attack.
OSHP Assistant Post Commander Rick Downey testified about his investigation and his attempt to interview appellant. He testified that appellant admitted to having patrolled Adams A during the attack. Downey testified that, other than this statement, appellant refused to answer any questions without an attorney being present. Six witnesses after Downey's testimony, appellant made a motion for a mistrial, claiming that Downey had made improper statements regarding appellant's invocation of his Fifth Amendment rights. The trial court denied the motion for a mistrial.
At the close of the state's case-in-chief, appellant made a motion for acquittal pursuant to Crim.R. 29(A). The trial court denied the motion. Appellant presented two witnesses, both former inmates at MCI. Kevin Fulkerson testified that prior to the attack it was known that Watkins and other black inmates were planning to confront the Aryans. Jeremy Lee Moore testified that Weirzack had stabbed Watkins, but that he had not observed appellant stabbing Watkins. Appellant renewed his motion for acquittal, which was again denied.
On August 19, 1999, court was recessed for the day after closing arguments. Appellant objected, arguing that the trial court should instruct the jury before calling the recess. The trial court noted the objection. On August 20, 1999, trial was reconvened, and the jury was given instructions. At the close of the instructions, appellant objected to the form of certain instructions on aiding and abetting. The trial court noted the objections.
On August 21, 1998, the jury returned its verdict, finding appellant guilty of aggravated murder and the death penalty specification. The sentencing phase of the trial was held on August 26, 1998. After deliberations, the jury found that the aggravating circumstances of the offense did not outweigh mitigating factors. On August 31, 1998, a sentencing hearing was held, at which the trial court ordered that appellant serve a thirty-years-to-life term of imprisonment, to be served consecutive to appellant's current sentence of imprisonment.
Appellant appeals, raising six assignments of error. For purposes of clarity, we address the assignments of error out of order.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN FAILING TO GRANT A MISTRIAL.
 In his second assignment of error, appellant contends that the trial court erred by failing to grant his motion for a mistrial. Appellant argues that his right to a fair trial was substantially prejudiced when Downey testified that appellant refused to answer questions during the investigation without an attorney present.
The first time Downey offered such testimony, the trial court sustained an objection to the testimony and instructed the jury to disregard the statement. The prosecutor then elicited from Downey that appellant admitted to patrolling the cell block during the attack. The prosecutor asked, "At that point he stated he didn't want to talk to you?" Downey answered affirmatively. There was not a contemporaneous objection, although appellant subsequently moved for a mistrial.
Granting or denying a motion for mistrial is within the sound discretion of the trial court, and will not be disturbed on appeal absent a showing that the accused has suffered material prejudice. State v. Blankenship (1995), 102 Ohio App.3d 534, 549, appeal not allowed, 73 Ohio St.3d 1426, affirmed (1996), 74 Ohio St.3d 522. A mistrial should be granted only when a fair trial is no longer possible. State v. Franklin (1991), 62 Ohio St.3d 118, 127, certiorari denied (1992), 504 U.S. 960, 112 S.Ct. 2315, certiorari denied (1995), 516 U.S. 950, 116 S.Ct. 394. A mistrial should not be granted merely because some minor error or irregularity has arisen. Blankenship, 102 Ohio App.3d at 549.
Courts strongly disapprove of using a defendant's exercise of his right to remain silent or right to consult an attorney as a basis for punishing the defendant. State v. Combs (1991), 62 Ohio St.3d 278,281, certiorari denied (1992), 504 U.S. 977,112 S.Ct. 2950. A prosecutor may not comment upon the defendant's refusal to testify as a premise for finding the defendant guilty. Id., citing Griffin v. California (1965), 380 U.S. 609, 85 S.Ct. 1229. A defendant's silence after being arrested and read his Miranda rights may not be used to impeach the defendant's trial testimony. Doyle v. Ohio (1976), 426 U.S. 610, 96 S.Ct. 2240. If a defendant asserts his right to silence after being taken into custody, but before being read his Miranda rights, that silence may not be used against the defendant at trial. Combs, 62 Ohio St.3d at 281-282.
Just as the state may not impeach a defendant's trial testimony with the defendant's post-arrest silence, the state may not present such evidence in its case-in-chief in order to refute a defense or allegation by the defendant, such as insanity. Wainwright v. Greenfield (1986), 474 U.S. 284, 106 S.Ct. 634; State v. Rogers (1987), 32 Ohio St.3d 70, certiorari denied,484 U.S. 958, 108 S.Ct. 357. Admission of testimony regarding a defendant's post-arrest silence may constitute reversible error even where the trial court explicitly directs the jury to disregard the statement. State v. Rowe (1993), 92 Ohio App.3d 652,670, jurisdictional motion overruled (1994), 69 Ohio St.3d 1403.
Where testimony is admitted regarding a defendant's post-arrest silence, such error should be "quantitatively assessed in the context of other evidence presented in order to determine (the effect it had on the trial)." Brecht v. Abrahamson (1993),507 U.S. 619, 629, 113 S.Ct. 1710, 1717. Thus, any error in the admission of such evidence is reviewed under the rubric of "harmless error." Id. at 631, 113 S.Ct. at 1717. Where evidence has been improperly admitted in derogation of a criminal defendant's constitutional rights, the admission is harmless "`beyond a reasonable doubt' if the remaining evidence alone comprises `overwhelming' proof of defendant's guilt." State v. Williams (1983), 6 Ohio St.3d 281, 290, certiorari denied,464 U.S. 1020, 104 S.Ct. 554, quoting Harrington v. California (1969),395 U.S. 250, 254, 89 S.Ct. 1726, 1728.
We are compelled to find that it was error to allow the admission of Downey's testimony regarding appellant's invocation of his constitutional rights, especially in light of the trial court's ruling striking identical earlier testimony. However, this error did not so prejudice appellant's rights as to require granting a mistrial. The state presented compelling evidence that appellant was a willing participant in the attack. Numerous corrections officers observed appellant in the cell block with a shank. Appellant confronted Parrish to prevent him from intervening. Wilson testified that a man fitting appellant's description stabbed Watkins. Weirzack testified that appellant did stab Watkins. Kirk testified that appellant's belongings had been packed as if he was expecting to be transferred after the attack.
In light of the evidence presented against appellant, we find that the error in admitting the statements by Downey regarding appellant's post-arrest silence were harmless beyond a reasonable doubt. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. 6:
 APPELLANT WAS DENIED A FAIR TRIAL AND DUE PROCESS BY ADMITTING IDENTIFICATION OF DEFENDANT AFTER AN IMPERMISSIBLY SUGGESTIVE PHOTO ARRAY.
 In his sixth assignment of error, appellant contends that the trial court erred by allowing Wilson to provide a description of the man he saw stabbing Watkins. Appellant argues that such testimony was excluded at the suppression hearing because of an impermissibly suggestive photo array.
At the suppression hearing, the trial court suppressed Wilson's identification of appellant in the photo array. The trial court found that the officers conducting the photo array had directly suggested to Wilson that appellant was the man he had seen stabbing Watkins. The trial court refused to suppress testimony regarding a previous, independent description of Watkins' attackers given by Wilson to F.B.I. Agent Louis Valdez, Jr., then an OSHP trooper. This description was independent of the later suggestive photo array.
At trial, no testimony was presented regarding Wilson's identification of appellant in the photo array. Wilson was allowed to describe the men he saw attacking Watkins. This description was the same description Wilson gave before he saw the photo array, and the trial court properly ruled that the testimony was admissible. Appellant's second assignment of error is overruled.
Assignment of Error No. 5:
 APPELLANT WAS DENIED DUE PROCESS OF LAW BY LACK OF EFFECTIVE COUNSEL DURING THE TRIAL OF THE CASE.
 In his fifth assignment of error, appellant contends that his trial counsel was ineffective, and that he was therefore deprived his right to a fair trial. Appellant argues that trial counsel was ineffective for admitting appellant's participation in the takeover of Adams A; for not raising certain objections; and for allowing the state to introduce evidence that appellant was a member of a racist group.
To establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that trial counsel's performance was deficient, namely, that counsel's representation fell below the objective standard of reasonable competence under the circumstances. Second, the defendant must show that, as a result of this deficiency, he was prejudiced at trial. Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064; State v. Mills (1992), 62 Ohio St.3d 357, 370, rehearing denied (1992),63 Ohio St.3d 1406, certiorari denied, Mills v. Ohio (1992),505 U.S. 1227, 112 S.Ct. 3048. Prejudice will be found only if the defendant proves that there is a reasonable possibility that, but for the unprofessional errors, the result of the proceedings against the defendant would have been different. There must be a probability sufficient to undermine confidence in the outcome of the case. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus, certiorari denied (1997), 522 U.S. 953,118 S.Ct. 376.
Any questions regarding the effectiveness of counsel must be viewed in light of the evidence against the defendant, id. at 142, with a "strong presumption that counsel's conduct falls within the wide range of professional assistance." Strickland at 689,104 S.Ct. at 2065; State v. Lytle (1976), 48 Ohio St.2d 391, 397, vacated in part on other grounds, Lytle v. Ohio (1978),438 U.S. 910, 98 S.Ct. 3135. Thus, it is not the role of the appellate court to second-guess the strategic decisions of trial counsel. State v. Carter (1995), 72 Ohio St.3d 545, 558, certiorari denied (1995), 516 U.S. 1014, 116 S.Ct. 575. Hindsight may not be used to distort the assessment of what was reasonable in light of trial counsel's perspective at the time. State v. Cook (1992), 65 Ohio St.3d 516,524-525, certiorari denied, Cook v. Ohio (1994),510 U.S. 1040, 114 S.Ct. 681. This is especially so in the case of motions and objections, where counsel is not required to make futile motions or objections that are without merit. See State v. Lott (1990), 51 Ohio St.3d 160, 175-176, certiorari denied,498 U.S. 1017, 111 S.Ct. 591.
Appellant first asserts that trial counsel was ineffective for admitting appellant's participation in the takeover of Adams A. Trial counsel admitted in opening arguments that substantial evidence was to be presented proving that appellant was involved in taking over the cell block. This evidence included eyewitness testimony and videotape and photographs of the incident. It would have been futile to attempt to argue that appellant was not in the cell block.
Instead, appellant's trial counsel argued that appellant did not intend that Watkins be killed. Trial counsel argued that appellant was unaware of the other Aryans' plan to kill Watkins until after they had taken over Adams A. Appellant sought to present some testimony in support of this argument, and trial counsel questioned the state's witnesses in an attempt to elicit testimony to support the argument. Under such circumstances, trial counsel was not ineffective for admitting appellant's participation in taking over the cell block, especially in light of trial counsel's contention that appellant only intended that Watkins be beaten, not killed.
Appellant next asserts that trial counsel was ineffective for not objecting to the question posed by the prosecutor to Downey regarding appellant's invocation of his constitutional rights. As noted above, although trial counsel did not contemporaneously object, trial counsel did subsequently move for a mistrial. In light of our resolution of appellant's first assignment of error, any deficiency by counsel in not making a contemporaneous objection did not so prejudice appellant's rights as to deprive appellant of a fair trial.
Appellant last asserts that trial counsel was ineffective for not objecting to the state's introduction of evidence regarding appellant's participation with the Aryan Brotherhood. Appellant argues that evidence of Aryan Brotherhood and its racist philosophies was introduced to establish motive and prior calculation without any foundation that appellant was an Aryan. Substantial testimony from corrections officers demonstrated that appellant was a member of the Aryan Brotherhood and that he subscribed to its beliefs. The state presented substantial testimony that the Aryans' beliefs played a central role in their attack upon Watkins. In light of this testimony, any objection made by trial counsel would have been futile.
We find that appellant's trial counsel was not ineffective. Any deficiency in trial counsel's competence did not deprive appellant of a fair trial. Accordingly, appellant's fifth assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN REFUSING TO CHARGE THE JURY INSTANTLY AFTER THE CONCLUSION OF ARGUMENT.
 In his third assignment of error, appellant contends that the trial court committed prejudicial error by not instructing the jury immediately after closing arguments were concluded. Appellant argues that the jury was allowed to spend the night considering the evidence and arguments without proper instruction, and that, as a result, appellant was deprived a fair trial.
R.C. 2945.10 sets forth the general order of proceedings at trial. R.C. 2945.10(G) provides, in pertinent part:
 The court, after the argument is concluded and before proceeding with other business, shall forthwith charge the jury.
* * *
 The court may deviate from the order of proceedings listed in this section.
 In complying with this section, the trial court is not required to necessarily give jury instructions immediately after closing arguments are concluded. Rather, the court may not proceed with other business until after the jury has been charged. Numerous cases have established that, before charging the jury, a trial court may call a short recess, State v. Balzhiser (1931), 10 Ohio Law Abs. 666, 668-669, a one-half hour recess, State v. Eaton (1969), 19 Ohio St.2d 145, 158, vacated in part on other grounds (1972), 408 U.S. 935, 92 S.Ct. 2857, or may adjourn for the day and charge the jury at the beginning of the next day. State v. Sheppard (1955), 100 Ohio App. 345, 395, appeal dismissed (1956), 164 Ohio St. 428, affirmed, 165 Ohio St. 293, certiorari denied 352 U.S. 910, 77 S.Ct. 118, certiorari denied, 352 U.S. 955, 77 S.Ct. 323, reversed on other grounds (1966), 384 U.S. 333, 86 S.Ct. 1507; State v. Kalhoun (1929), 33 Ohio App. 1, 10-11.
Where the trial court deviates from the order of proceedings set forth in R.C. 2945.10, the decision of the trial court will not be reversed unless the defendant suffered material prejudice. See State v. Owens (1993), 91 Ohio App.3d 479, 486. In determining whether the defendant suffered a material prejudice from a delay in charging the jury, whether the trial court admonished the jury to separate and to not form an opinion until after the case is submitted to the jury will carry great weight. Id. Whenever the jury is allowed to separate during the trial, the jury must be admonished, pursuant to R.C. 2945.34, not to convene with, nor permit themselves to be addressed by any person, nor to listen to any conversation on the subject of the trial, nor form or express any opinion thereon, until the case is finally submitted to them.
 When such admonitions are given, the jury is presumed to have followed the directions of the trial court, unless the defendant shows otherwise. State v. Loza (1994), 71 Ohio St.3d 61, 75, reconsideration denied, 71 Ohio St.3d 1437, certiorari denied (1995), 514 U.S. 1120, 115 S.Ct. 1983.
In the instant case, the trial court adjourned the trial for the day after closing arguments were concluded. The trial court admonished the jury, at length, to not form any opinions and to not discuss the case, until after being properly instructed the following day. Appellant has not demonstrated, other than by speculation, that he was prejudiced by the trial court's decision.
We find that the trial court did not abuse its discretion by instructing the jury the day after closing arguments were finished, and appellant has not shown any prejudice as a result of the trial court's decision. Accordingly, appellant's third assignment of error is overruled.
Assignment of Error No. 4:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN REFUSING TO GIVE AN INSTRUCTION, WITH RESPECT TO AIDER AND ABETTOR LIABILITY, THAT IF THE JURY FINDS APPELLANT GUILTY OF AGGRAVATED MURDER, THAT IT MUST FIND APPELLANT HAD BOTH PURPOSE TO KILL AND ACTED WITH PRIOR CALCULATION AND DESIGN.
 In his fourth assignment of error, appellant contends that the trial court erred by refusing to give a requested instruction on aiding and abetting. Appellant asserts that the instruction given by the trial court was incomplete and could have misled the jury into believing that appellant could be convicted based upon a common plan of the other Aryans, even if appellant was not a party to that plan.
The general rule with regard to proposed jury instructions is that "if requested special instructions to the jury are correct, pertinent and timely presented, they must be included, at least in substance, in the general charge." State v. Snowden (1982),7 Ohio App.3d 358, 361, quoting Cincinnati v. Epperson (1969),20 Ohio St.2d 59, paragraph one of the syllabus. Nonetheless, a defendant is entitled only to have the law stated correctly by the trial court, not to have his proposed instructions presented to the jury. Snowden, 7 Ohio App.3d at 363. A trial court's refusal to give requested jury charges based upon the evidence at trial is reviewed for abuse of discretion. State v. Endicott (1994),99 Ohio App.3d 688, 693.
The challenged portion of the jury instruction given reads:
 Mere presence by the defendant at the scene of the offense is insufficient to establish aiding and abetting. There must have been a common design or plan to commit an aggravated murder and some act in furtherance of the design or plan by defendant before he becomes an aider and abettor to aggravated murder.
 In State v. Bishop (Oct. 5, 1998), Madison App. No. 97-07-032, unreported, we considered the import of a jury instruction virtually identical to that given by the trial court in the instant case. Id. at 11, fn. 4. The defendant in Bishop challenged the jury instruction as being ambiguous, allowing the jury to believe that it could convict him without specifically finding that he had the requisite mental state to commit the crime. Id. at 11-12. In reviewing the instruction as a whole, rather than the few sentences challenged by the defendant, we found that the instruction was not ambiguous and that it conformed with the applicable law:
 When read as a whole, it is clear that the [trial] court fully explained to the jury that the inference of appellant's intent arising from his participation in the crime was not conclusive, and that even if the jury found that appellant was an aider and abettor, it was still required to find a specific intent to kill.
* * *
 Even if the instruction was arguably ambiguous in some respect, the state provided substantial evidence of appellant's intent and participation in the offense, and any error was harmless.
Id. at 13-14 (citations omitted).
Upon a thorough review of the instructions given by the trial court in the instant case, we adhere to our decision in Bishop. The state presented ample evidence of appellant's participation in Watkins' murder. There was substantial evidence of appellant's association with the Aryan Brotherhood at MCI. Wilson described a man similar in appearance to appellant stabbing Watkins. Weirzack, a fellow Aryan, testified that appellant did, in fact, stab Watkins. Numerous corrections officers observed appellant patrolling the cell block. Parrish testified that appellant confronted him with a shank when he attempted to enter the cell block and stop the attack.
Considering the evidence presented against appellant and the jury instructions as a whole, we find that the trial court's instructions to the jury were not ambiguous or erroneous. There was no need for instructions beyond those given, and the trial court did not err by refusing to give the proposed instructions. Accordingly, appellant's fourth assignment of error is overruled.
Assignment of Error No. 1:
 THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT A CONVICTION OF AGGRAVATED MURDER WITH PRIOR CALCULATION AND DESIGN AND THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 In his first assignment of error, appellant contends that the trial court erred by denying his motion for acquittal. Appellant asserts that the state failed to provide sufficient evidence tending to prove that he possessed the requisite mental state for aggravated murder. Appellant further contends that his conviction was against the manifest weight of the evidence.
Crim.R. 29 states, in pertinent part:
 (A) Motion for judgment of acquittal. The trial court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.
 A trial court will not enter a judgment of acquittal under Crim.R. 29(A) for the defendant if reasonable minds could differ as to whether the state has proven every material element of the crime. State v. Evans (1992), 63 Ohio St.3d 231, 248, certiorari denied (1992), 506 U.S. 886, 113 S.Ct. 246. In ruling on a Crim.R. 29(A) motion, the trial court must view the evidence in a light most favorable to the state, the party against whom the motion is directed. State v. Fields (1995), 102 Ohio App.3d 284, 288-89. Review of a denial of a motion for acquittal is de novo, and the trial court will not be reversed unless reasonable minds could only reach the conclusion that the evidence was insufficient to sustain a conviction. State v. Miley (1996), 114 Ohio App.3d 738, 742, leave to appeal denied (1997), 77 Ohio St.3d 1584.
R.C. 2903.01(A) provides:
 No person shall purposefully, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy.
"Purposefully" is defined in R.C. 2901.22(A):
 A person acts purposefully when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
"Prior calculation and design" requires
 "a scheme designed to implement the calculated decision to kill." In addition, "[n]either the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves," but "momentary deliberation" is sufficient.
 State v. Awkal (1996), 76 Ohio St.3d 324, 330, certiorari denied (1997), 519 U.S. 1096, 117 S.Ct. 776. Intent on the part of an aider and abettor may be inferred where the facts show that the participants in the crime entered into a common design, and either the aider and abettor knew that an inherently dangerous instrumentality was to be used in the crime, or knew that the felony and its manner of accomplishment would be reasonably likely to result in death. State v. Scott (1980), 61 Ohio St.2d 155, 165.
The state introduced sufficient evidence demonstrating that appellant intended the death of Damico Watkins as part of a common plan. Appellant packed his things before meeting with the other Aryans and taking over Adams A. Appellant possessed a shank, as did all of the other Aryans. Appellant took part in threatening Corrections Officer Browning when taking over the cell block. Appellant confronted and threatened Corrections Officer Parrish, successfully preventing him from intervening in the attack. At no time did appellant voice an objection to the attack upon Watkins. Two witnesses testified that appellant stabbed Watkins.
Appellant argues that the state failed to provide evidence which directly contradicted his assertion that he intended Watkins to be physically beaten, not killed. The state provided evidence tending to prove otherwise. All of the Aryans entered the cell block with shanks, homemade knives designed to kill someone. At no time did any Aryan attempt to beat Watkins. Immediately upon entering Watkins' cell, the Aryans began to stab Watkins, and they then followed him throughout the cell block, repeatedly stabbing him. Appellant presented no evidence or testimony that he objected to this attack or that he sought to denounce the attack, even after being taken into custody. The trial court did not err by overruling appellant's motion for acquittal.
Appellant further contends that his conviction was against the manifest weight of the evidence. Unlike a challenge to the sufficiency of the evidence, which attacks the adequacy of the evidence presented, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. State v. Thompkins (1997), 78 Ohio St.3d 380, 386-87, rehearing/reconsideration denied, 79 Ohio St.3d 1451. When inquiring into the manifest weight of the evidence, the reviewing court sits as the "thirteenth juror and makes an independent review of the record." Id. at 387; Tibbs v. Florida (1982),457 U.S. 31, 42, 102 S.Ct. 2211, 2218. In taking on this role,
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of all witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 State v. Martin (1983), 20 Ohio App.3d 172, 175. A decision will not be disturbed on appeal as being against the weight of the evidence if reasonable minds could arrive at the conclusion reached by the trier of fact. Fields, 102 Ohio App.3d at 287.
The state presented compelling evidence from which the jury could conclude that appellant was a knowing and willing participant in the attack upon Damico Watkins. Appellant was a known member of the Aryan Brotherhood. He packed his belongings in anticipation of the aftermath of the attack. He entered the cell block with a shank, and the testimony of two witnesses, if believed, proved that appellant stabbed Watkins. Appellant prevented authorities from taking action to stop the attack.
Upon a thorough review of the record, we find that appellant's conviction for aggravated murder was not against the manifest weight of the evidence. Accordingly, appellant's first assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and VALEN, J., concur.