JOURNAL ENTRY AND OPINION
{¶ 1} Defendant, Lu'Ray Hawkins, appeals his jury trial conviction for two counts of rape in violation of R.C. 2907.02
and one count of gross sexual imposition in violation of R.C.2907.05. Defendant was a family friend of the fifteen-year-old victim's mother. One evening, at the home of the victim and her mother, defendant was watching a movie and eating pizza. The mother went to her bedroom and left defendant and the victim watching television. The victim was lying on the couch in her pajamas when defendant sat next to her and ran his hands up her legs and onto her stomach. He then put his hand down her "boxers" and inserted his finger into her vagina. Although she asked him to leave her alone, he then pulled down her pajama bottoms and the boxer shorts she was also wearing and put his tongue on her external genitals. The victim tried to resist but did not call out to her mother for fear of getting in trouble. After hearing a noise in the mother's bedroom, defendant got up and left.
 {¶ 2} After defendant left, the victim went into her mother's room, but she did not tell her about what he had done. The next day, the victim telephoned a friend and told her what had happened and then handed the phone to her mother for the friend to tell her. The same day, they filed a complaint with the police.
 {¶ 3} A detective from the sex crimes and child abuse unit contacted defendant and made an appointment for him to come down to make a statement. Although defendant checked in at the front desk at police headquarters, he never appeared for his appointment with the detective. He was later arrested, indicted, and convicted. He now timely appeals, stating eleven assignments of error, the first of which states:
 {¶ 4} Mr. Hawkins was denied his rights to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution by virtue of his counsel's failure to move to dismiss the instant case for want of speedy trial.
 {¶ 5} Defendant argues that his counsel was ineffective for failing to raise the issue of speedy trial. A count of the time between his arrest and his trial shows that, unless he had a parole holder on him, his speedy trial time had expired. If he had a parole holder on him, however, then his speedy trial time was not exceeded.
 {¶ 6} Defendant was taken into custody on March 27th. On April 1st, he filed a request for discovery, which tolled the running of the speedy trial time. Five days, therefore, are chargeable to the state. Additionally, at the April 11th and 18th and May 1st pretrials, defendant requested continuances, which also tolled the speedy trial time. On May 10th, another pretrial was continued, but the docket does not indicate the reason for this continuance. Thirteen days are chargeable, therefore, against the state for this continuance. On May 23rd and May 29th, defendant again requested continuances.
 {¶ 7} From June 6th until July 15th, however, the pretrials were continued without explanation; again, 39 days are chargeable against the state. On July 15th, defendant requested another continuance, which was granted until August 2nd. On August 6th, 20th, and 27th, pretrials were continued without a stated reason; thus another 129 days were chargeable to the state. The total time chargeable to the state is 186 days.
 {¶ 8} A defendant must be tried within 270 days. If he is in jail, each day counts as three, so he must be tried within 90 days. R.C. 2945.71. If the state has a parole holder on the defendant, however, the triple count does not apply and the state has 270 days to bring the defendant to trial. Id.[1]
 {¶ 9} The state argues that "there was a parole hold on [defendant]. * * * Since there was a parole hold, the State had 270 days to bring [defendant] to trial." If the state is correct, the speedy trial time was not exceeded.
 {¶ 10} "R.C. 2945.73(C) provides that a criminal defendant shall be discharged if he is not brought to trial within the time required by 2945.71 and 2945.72 of the Revised Code. This provision likewise requires that the issue of timeliness be brought to the court's attention upon motion made at or prior to the commencement of trial. Consequently, speedy trial provisions are not self-executing but must be asserted by a criminal defendant in a timely manner in order to avoid waiving such rights. Partsch v. Haskins (1963), 175 Ohio St. 139,191 N.E.2d 922; State v. Trummer (1996), 114 Ohio App.3d 456, 470-471,683 N.E.2d 392; State v. Dumas (1990), 68 Ohio App.3d 174, 176,587 N.E.2d 932; see, also, State v. Frazier (June 14, 2001), Cuyahoga App. No. 76775, at *4-5, 2001 Ohio App. LEXIS 2768;State v. Sadovskiy (Apr. 6, 2000), Cuyahoga App. No. 77104, at *5-6, 2000 Ohio App. LEXIS 1559.
 {¶ 11} Defendant did not assert this right. Specifically, defendant did not request the court to dismiss the charges against him. "Absent such a request, appellant has waived the denial of his speedy trial rights and cannot raise this issue for the first time on appeal." State v. Baldauf (1990),67 Ohio App.3d 190, 197, 586 N.E.2d 237; Worthington v. Ogilby (1982),8 Ohio App.3d 25, 27, 8 OBR 26, 455 N.E.2d 1022; State v.Tornstrom (Nov. 19, 1998), Cuyahoga App. No. 72898, at *15, 1998 Ohio App. LEXIS 5464.
 {¶ 12} Although defendant is barred from raising the issue of speedy trial for the first time on appeal, "[t]he failure to raise a valid defense may support a claim of ineffective assistance of counsel. State v. Kole (2001), 92 Ohio St.3d 303,750 N.E.2d 148." However, if resolving the question of whether appellant's speedy trial rights were violated appears to depend on evidence outside the record and, therefore, the issue could not have been properly raised on appeal, "the appropriate manner in which to resolve this issue would be by way of petition for post-conviction relief." State v. Jordon, Cuyahoga App. Nos. 79469 and 79470, 2002-Ohio-590, at *30. Accord State v. Duvall,
Cuyahoga App. No. 80316, 2002-Ohio-4574.
 {¶ 13} In other words, defendant may have a valid claim. Because it requires proof from matters outside the record, however, he must raise it in a motion for post-conviction relief. Accordingly, the first assignment of error is overruled.
 {¶ 14} Defendant's second assignment of error states:
 {¶ 15} The trial court erred when it administered the oath to the venire outside the presence of either Mr. Hawkins or his counsel, in violation of Mr. Hawkins' federal and state constitutional rights to confrontation and to counsel, and in violation of Crim.R. 43.
 {¶ 16} After bringing the potential jurors into the courtroom, the court administered the initial oath to them before defendant and his counsel arrived. Defendant made no objection to his absence, so he waived his right to appeal any error except plain error. Defendant claims that this error is a violation of his due process rights because "[i]t may well be that, had Mr. Hawkins and his counsel been present, they would have noticed if any venireperson refused to respond to the oath or even made a gesture, such as shaking one's head, that indicated that a particular venireperson was not acceding to the oath."
 {¶ 17} Both the United States and Ohio Constitutions, as well as Ohio statute, protect the rights of a defendant to be present at his trial. R.C. 2945.12 states:
A person indicted for a misdemeanor, upon request in writing subscribed by him and entered in the journal, may be tried in his absence by a jury or by the court. No other person shall be tried unless personally present, but if a person indicted escapes or forfeits his recognizance after the jury is sworn, the trial shall proceed and the verdict be received and recorded. * * * If the offense charged is a felony, the case shall be continued until the accused appears in court, or is retaken.
 {¶ 18} These rights, however, although constitutional in nature, are not absolute.
Errors of constitutional dimension are not ipso facto prejudicial. As the United States Supreme Court stated in the landmark case of Chapman v. California (1967), 386 U.S. 18, 22: "* * * We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." In order to be deemed nonprejudicial, error of constitutional stature, either state or federal, must be "harmless beyond a reasonable doubt." Chapmanv. California, supra, at 24; State v. Abrams (1974),39 Ohio St.2d 53 [68 O.O.2d 30], paragraph two of the syllabus. Particularly, as regards a defendant's constitutional right to be present at all stages of his trial, prejudicial error exists only where "a fair and just hearing * * * [is] thwarted by his absence." Snyder v. Massachusetts (1934), 291 U.S. 97, 108. See, also, United States v. Brown (C.A. 6, 1978), 571 F.2d 980.
 {¶ 19} State v. Williams (1983), 6 Ohio St.3d 281, 286.
 {¶ 20} Defendant was present for every stage of the proceedings except the first swearing in of the potential jury panel. Defendant's conjecture that perhaps he or his counsel would have noticed a gesture or an expression on a juror's face to indicate that the juror intended to falsify the oath is not sufficient to show plain error. "So far as theFourteenth Amendment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Snyder v. Massachusetts (1934), 291 U.S. 97, 107-108. Defendant presented no evidence that his absence thwarted a fair and just hearing. The second assignment of error is, therefore, denied.
 {¶ 21} For his third assignment of error, defendant states:
 {¶ 22} The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that Mr. Hawkins was guilty of rape as alleged in counts one and two.
 {¶ 23} Defendant argues that because the jury instructions did not define the act of digital penetration, the jury could not have found him guilty on both counts of rape. The state does not dispute that this instruction was absent from the jury instructions. Rather, it argues that because in its closing arguments the state told the jury that digital penetration constituted rape, the jury knew this point of law and could properly apply it. Defendant also argues that the victim stated on cross-examination that defendant had not actually inserted his tongue into her vagina, but rather had it inside "the lips," or labia. Defendant claims that this statement prevents him from being convicted of rape for the cunnilingus.
 {¶ 24} When assessing the sufficiency of evidence, a reviewing court looks to determine only whether enough evidence, if believed, exists to support a conviction. The court does not weigh the evidence. Rather, it construes the evidence most favorably to the state. State v. Martin (1983),20 Ohio App.3d 172.
 {¶ 25} The rape statute states in pertinent part: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2). This chapter of the code defines "sexual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, theinsertion, however slight, of any part of the body or anyinstrument, apparatus, or other object into the vaginal or analcavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." (Emphasis added.) R.C.2907.01(A).
 {¶ 26} The jury instruction's definition of sexual conduct omitted the language emphasized above. The court went on to define vaginal and anal intercourse as penetration with the penis. The court did not mention penetration by other body parts or items. Defendant is correct in stating that the jury could not have found defendant guilty of rape for the digital penetration. The state's closing argument, as the judge told the jury, is not evidence. Additionally, when the judge began his jury instructions, he told the jury: "* * * you have to * * * accept the law as I give it to you." Anything said in the state's closing argument, therefore, would not and should not be applied as law by the jury. Thus defendant's right to due process was violated when he was convicted for a crime that did not comport with the charge as defined by the court's jury instructions. Defendant's argument on his conviction for digital rape has merit.
 {¶ 27} Defendant also argues that because the victim testified that defendant had not inserted his tongue into her vagina, he could not be convicted of rape for cunnilingus. He claims that "the female `sex organ' is limited to the vagina, which is the inner portion of the vulva * * *." This argument lacks merit.
 {¶ 28} Defendant relies on State v. Napier (Mar. 20, 1996), Medina App. No. 2472-M, 1996 Ohio App. LEXIS 1020. Napier
differs substantially, however, from the case at bar. InNapier, the defendant forced a girl's head against her mother's "muff," that is her naked pubic area. Later, she pointed to the area and gave another name to the area, "vagina." The court found that there was no evidence that the girl's mouth actually made contact with the mother's sex organ, only that some part of her head made contact. The court reversed judgement on the count of rape because the child testified to contact with her head, not oral contact. As the reviewing court in Napier said, "the key is oral and not mere facial contact." The issue was not between labia and vagina. Nor did the court define "sex organ."
 {¶ 29} In the case at bar, the victim testified on direct: "Then he proceeded to put his tongue inside my vagina and moving it around." On cross, she stated that he placed his tongue "not on the inside, just around the lips." Unlike the facts inNapier, there is no question there was oral contact. However, whether the child is referring to the inside of the vagina or the vulva was never made clear. The jury could have resolved that ambiguity by focusing upon her statement that defendant was moving his tongue "around" and concluded that he touched the vagina.
 {¶ 30} The statute does not define cunnilingus. Black's Law Dictionary, 5th Ed., defines it as "[a]n act of sex committed with the mouth and the female sexual organ." Defendant argues that the rest of the terms defined under R.C. 2907.01(A), that is, vaginal intercourse, anal intercourse, and fellatio, all entail penetration and "the principle of ejusdem generis
dictates that the remaining term or terms also carries [sic] that common characteristic." We disagree on this reading. First of all, vaginal intercourse is the first listing of "sexual conduct." "Anal intercourse, fellatio, and cunnilingus" are grouped together in a separate listing. Penetration has no meaning in the description of "fellatio" because of the reversal of body parts. In fellatio the focus is on the mouth. Similarly, penetration has little meaning in cunnilingus, which focuses on the use of the tongue. In fact, the last sentence under R.C.2907.01(A) discusses penetration solely in the context of intercourse, both anal and vaginal.
 {¶ 31} We do not agree that the distinction between buttocks and anal cavity for purposes of anal intercourse (See State v.Wells [2001], 91 Ohio St.3d 32) requires us to distinguish between vulva and vagina for the purpose of defining "sexual organ" under cunnilingus. Labia and vulva could be included under the broad term "female sexual organ" in the definition of cunnilingus. Thus the jury could properly have concluded that evidence of defendant's tongue touching the labia or inside the vulva sufficed to convict defendant of cunnilingus. We conclude there was sufficient evidence to support a conviction of cunnilingus and, therefore, rape. The third assignment of error is sustained in part on the digital rape conviction and overruled in part on the cunnilingus conviction.
 {¶ 32} For his fourth assignment of error, defendant states:
 {¶ 33} The rape convictions were against the manifest weight of the evidence.
 {¶ 34} Defendant also argues that the weight of the evidence is against conviction. He relies on the same arguments made under the third assignment of error, that is, that the jury instruction did not define digital penetration as rape and that the evidence did not support a finding that defendant's tongue made contact with the victim's sex organ. We discussed that evidence under that assignment.
 {¶ 35} When addressing the manifest weight of the evidence, the reviewing court weighs the evidence to determine whether the jury lost its way and thereby created a manifest miscarriage of justice requiring reversal and a new trial. State v. Thompkins
(1997), 78 Ohio St.3d 380. In the case at bar, the manifest weight of the evidence supports a conviction for cunnilingus. We need not address this assignment as it pertains to count one because we previously determined there was not sufficient evidence for the conviction as defined in the court's jury instruction. This assignment of error as it applies to the conviction for cunnilingus is without merit.
 {¶ 36} For his fifth assignment of error, defendant states:
 {¶ 37} The conviction for gross sexual imposition (Count Five) should be reversed because there is grave risk that the petit jury found Mr. Hawkins guilty of a different offense than that upon which the grand jury found probable cause.
 {¶ 38} Defendant claims that the jury might not have differentiated between the actual instances of rape and the defendant's other conduct constituting gross sexual imposition. The statute addressing gross sexual imposition states:
No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: (1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.
 {¶ 39} R.C. 2907.05(A)(1). Sexual contact is defined as: "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01.
 {¶ 40} The courts have consistently held that when the trial court gives a general unanimity instruction, the jury can be assumed to have followed that instruction. "However, if a single count can be divided into two or more `distinct conceptual groupings,' the jury must be instructed specifically that it must unanimously conclude that the defendant committed acts falling within one such grouping in order to reach a guilty verdict."State v. Johnson (1989), 46 Ohio St.3d 96.
 {¶ 41} The counts for gross sexual imposition and for rape were distinctly separate, both in the indictment and in the jury instructions. Further, the court gave the general unanimity instruction, stating,
Because this is a criminal case the law requires that all 12 of you be in agreement before you can say that you have reached a verdict. Five verdict forms will go with you into the deliberation room. * * * They should not be filled in or signed until all 12 of you agree upon a verdict in each of the separate five counts.
The separate five counts are matters for separate consideration, that is, that if Defendant is found guilty of one count, that does not necessarily follow that he need be found guilty of the other counts. You can find the Defendant guilty of all, not guilty of all, guilty of some, not guilty of others. They are matters for separate consideration.
 {¶ 42} The court clearly instructed the jury on the differences between the crimes and clearly instructed the jury that each count had to be decided separately. This assignment of error is without merit.
 {¶ 43} For his sixth assignment of merit, defendant states:
 {¶ 44} The trial court erred when it failed to dismiss the gross sexual imposition conviction as being allied to the rape convictions and thus violated Mr. Hawkins' rights under R.C.2941.25 (allied offenses) and the double jeopardy clause of Art.I., Section 10 of the Ohio Constitution and the fifth andFourteenth Amendments to the United States Constitution.
 {¶ 45} Defendant also argues that the gross sexual imposition and the rape were part of the same crime, and they therefore are allied offenses. Allied offenses are defined in R.C. 2941.25, which states:
Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
 {¶ 46} In order to determine whether offenses are allied, the Ohio Supreme Court has established a two-tiered test:
In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses. State v. Mughni (1987),33 Ohio St.3d 65.
 {¶ 47} State v. Blankenship (1988), 38 Ohio St.3d 116, 117.
An analysis of the foregoing statutes [R.C. 2907.01(B), 2907.05
and 2907.12] demonstrates that an accused may violate R.C.2907.05, gross sexual imposition, without violating R.C. 2907.12, felonious sexual penetration. The converse, however, is not necessarily true. An accused who commits felonious sexual penetration also commits gross sexual imposition. Thus, the first element of the two-tiered test for determining allied offenses of similar import is satisfied.
 {¶ 48} State v. Dehler (July 14, 1994), Cuyahoga App. No. 65716, 1994 Ohio App. LEXIS 3103, at *38. By analogy, it is clear that a person who commits rape of necessity also commits gross sexual imposition.
 {¶ 49} The second element of the Blankenship test, a separate animus or separate commission of the crime, however, is present, preventing these from being allied offenses. After defendant had performed cunnilingus on the victim, he then forced her to turn around and placed his penis on her back. Part of the definition of gross sexual imposition includes "caus[ing] another, not the spouse of the offender, to have sexual contact with the offender * * *." The victim was thus forced into physical contact, i.e. touching, with defendant's penis, an erogenous zone. This act was distinct and separate from the act of cunnilingus. The courts have held that acts of oral sex, vaginal sex, and anal sex performed one right after the other are not allied offenses, but rather are separate crimes, each with a different animus. State v. Nicholas (1993), 66 Ohio St.3d 431. Similarly here, defendant had completed the act of cunnilingus when he turned the victim over and placed his penis on her back. These were separate acts and are not allied offenses. This assignment of error lacks merit.
 {¶ 50} For his seventh assignment of error, defendant states:
 {¶ 51} The trial court erred when it delayed instructing the jury until the next morning following closing arguments.
 {¶ 52} After closing arguments, the court sent the jury home. It gave jury instructions the following morning. Defendant alleges that this was error and that he should be granted a new trial. R.C. 2945.01 requires, in pertinent part: "(G) The court, after the argument is concluded and before proceeding with other business, shall forthwith charge the jury. Such charge shall be reduced to writing by the court if either party requests it before the argument to the jury is commenced. Such charge, or other charge or instruction provided for in this section, when so written and given, shall not be orally qualified, modified, or explained to the jury by the court. Written charges and instructions shall be taken by the jury in their retirement and returned with their verdict into court and remain on file with the papers of the case."
 {¶ 53} Nonetheless, the courts are allowed flexibility in managing a trial. "Any decision to vary the order of proceedings at trial is within the sound discretion of the trial judge, and any claim that a judge erred in following the statutorily mandated order of proceedings must sustain a heavy burden to demonstrate the unfairness and prejudice of following the statute." State v. Bayless (1976), 48 Ohio St.2d 73, 104. In the case at bar, defendant has not alleged any prejudice; instead, he merely states that because the court did not follow this statute, he deserves a new trial. This hardly complies with the requirement of demonstrating prejudice and unfairness.
 {¶ 54} Further, as one court noted:
In complying with this section, the trial court is not required to necessarily give jury instructions immediately after closing arguments are concluded. Rather, the court may not proceed with other business until after the jury has been charged. Numerous cases have established that, before charging the jury, a trial court may call a short recess, State v. Balzhiser (1931), 10 Ohio L. Abs. 666, 668-669, a one-half hour recess, State v.Eaton (1969), 19 Ohio St.2d 145, 158, 249 N.E.2d 897, vacated in part on other grounds (1972), 408 U.S. 935, 92 S.Ct. 2857,33 L.Ed.2d 750, or may adjourn for the day and charge the jury at the beginning of the next day. State v. Sheppard (1955),100 Ohio App. 345, 395, 128 N.E.2d 471, appeal dismissed (1956),164 Ohio St. 428, 131 N.E.2d 837, affirmed, 165 Ohio St. 293,135 N.E.2d 340, certiorari denied 352 U.S. 910, 77 S.Ct. 118,1 L.Ed.2d 119, certiorari denied, 352 U.S. 955, 77 S.Ct. 323,1 L.Ed.2d 245, reversed on other grounds (1966), 384 U.S. 333,86 S.Ct. 1507, 16 L.Ed.2d 600; State v. Kahoun (1929),33 Ohio App. 1, 10-11, 168 N.E. 550.
Where the trial court deviates from the order of proceedings set forth in R.C. 2945.10, the decision of the trial court will not be reversed unless the defendant suffered material prejudice. See State v. Owens (1993), 91 Ohio App.3d 479, 486,632 N.E.2d 1301. In determining whether the defendant suffered a material prejudice from a delay in charging the jury, whether the trial court admonished the jury to separate and to not form an opinion until after the case is submitted to the jury will carry great weight. Id. Whenever the jury is allowed to separate during the trial, the jury must be admonished, pursuant to R.C. 2945.34, "not to convene with, nor permit themselves to be addressed by any person, nor to listen to any conversation on the subject of the trial, nor form or express any opinion thereon, until the case is finally submitted to them." When such admonitions are given, the jury is presumed to have followed the directions of the trial court, unless the defendant shows otherwise. State v.Loza (1994), 71 Ohio St.3d 61, 75, 641 N.E.2d 1082, reconsideration denied, 71 Ohio St.3d 1437, 643 N.E.2d 142, certiorari denied (1995), 514 U.S. 1120, 115 S.Ct. 1983,131 L.Ed.2d 871.
In the instant case, the trial court adjourned the trial for the day after closing arguments were concluded. The trial court admonished the jury, at length, to not form any opinions and to not discuss the case, until after being properly instructed the following day. Appellant has not demonstrated, other than by speculation, that he was prejudiced by the trial court's decision.
We find that the trial court did not abuse its discretion by instructing the jury the day after closing arguments were finished, and appellant has not shown any prejudice as a result of the trial court's decision.
 {¶ 55} State v. Bowling (Nov. 22, 1999), Madison App. No. CA98-09-034, at *19-20.
 {¶ 56} Here, also, defendant has not shown that the court abused its discretion by giving jury instructions the day after closing arguments. Nor has he shown any resulting prejudice. This assignment of error is without merit.
 {¶ 57} For his eighth assignment of error, defendant states:
 {¶ 58} The state improperly admitted evidence of Mr. Hawkins' refusal to speak with police.
 {¶ 59} After the victim and her mother filed a complaint with the police, a detective from the sex crimes and child abuse unit telephoned defendant and asked him to come down and make a statement. They set up an appointment, and defendant went to the police station for the meeting. He checked in at the first floor desk and signed in, but he never got to the detective's office. The detective testified to these events at trial. Defense counsel objected, and the court cautioned the jury that defendant had no obligation to give a statement to the police and that his silence could not be held against him. Further, on cross-examination, defense counsel elicited from the detective that although the detective believed that defendant chose not to show up at her office, she never confirmed this reason for his not appearing.
 {¶ 60} It is axiomatic that a defendant may not be compelled to testify against himself and that his silence cannot be held against him. "[T]the use for impeachment purposes of petitioners' silence, at the time of arrest and after receivingMiranda warnings, violated the Due Process Clause of theFourteenth Amendment." State v. Doyle (1976), 426 U.S. 610,619, emphasis added. In the case at bar, defendant's silence or failure to appear at the appointment was well before his arrest and well before he received his Miranda warning. Although the court was correct in noting that the questioning was getting "awfully close," the questioning did not cross the line into violating the fifth amendment rights.
The warnings set forth in Miranda v. Arizona (1966),384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, 10 Ohio Misc. 9, 36 Ohio Op.2d 237, are required only when a suspect is subjected to custodial interrogation. The United States Supreme Court defines custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444. Accordingly, police are not required to administer Miranda warnings to every individual they question.Oregon v. Mathiason (1977), 429 U.S. 492, 50 L.Ed.2d 714,97 S.Ct. 711, State v. Biros (1997), 78 Ohio St.3d 426, 440,678 N.E.2d 891.
 {¶ 61} State v. Martin, Montgomery App. No. 19186, 2002-Ohio-2621, ¶ 27.
 {¶ 62} If a reasonable person would understand that he was free to leave, that is, that there was no arrest or restraint of freedom similar to that accompanying an arrest, then the questioning is not a custodial interrogation. Id. Even when a suspect is asked to come to the police station for questioning, the police are not required to give him a Miranda warning unless he is arrested. Further, any statements he makes during that questioning are admissible at trial, provided a reasonable person in defendant's situation would have understood that he was free to go. The Second Appellate District has established a test for determining whether an objectively reasonable person would feel he was in custody and not free to go:
What was the location where the questioning took place — i.e., was the defendant comfortable and in a place a person would normally feel free to leave? For example, the defendant might be at home as opposed to being in the more restrictive environment of a police station;
Was the defendant a suspect at the time the interview began (bearing in mind that Miranda warnings are not required simply because the investigation has focused);
Was the defendant's freedom to leave restricted in any way;
Was the defendant handcuffed or told he was under arrest;
Were threats made during the interrogation;
Was the defendant physically intimidated during the interrogation;
Did the police verbally dominate the interrogation;
What was the defendant's purpose for being at the place where questioning took place? For example, defendant might be at a hospital for treatment instead of being brought to the location for questioning;
Were neutral parties present at any point during the questioning;
Did police take any action to overpower, trick or coerce the defendant into making a statement.
 {¶ 63} State v. McCrary, Montgomery App. No. 18885, 2002-Ohio-396, 2002-Ohio-App. LEXIS 349, at *6-7, citing Statev. Estepp, (Nov. 26, 1997), Montgomery App. 16279, 1997 Ohio App. LEXIS 5279 at *5.
 {¶ 64} The courts have held, therefore, that statements made during questioning of a suspect who is not in custody are admissible despite the absence of a Miranda warning. In the case at bar, defendant came to the station and then left. Although the questioning was to have taken place at the police station, defendant was not restrained, intimidated, dominated, or tricked. Defendant's lack of statement, that is, his failure to keep the appointment for questioning despite his signing in at the police station, is also, therefore, admissible.
 {¶ 65} This assignment of error lacks merit.
 {¶ 66} For his ninth assignment of error, defendant states:
 {¶ 67} The evidence was insufficient to sustain the finding that Mr. Hawkins was a sexual predator.
 {¶ 68} Defendant argues that the evidence does not support the court's finding that he is a sexual predator. The court's decision must be supported by clear and convincing evidence, which must show first, that defendant has been convicted of or pleaded guilty to a sexually oriented offense, and second, that he is likely to reoffend in the future. R.C. 2950.09. Because he was convicted of rape twice, defendant fulfills the first requirement. In determining the second requirement, the court must consider the factors listed in the statute. These factors include, but are not limited to:
The offender's or delinquent child's age;
The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
Any mental illness or mental disability of the offender or delinquent child;
The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct.
 {¶ 69} At the sexual predator hearing, the prosecutor addressed each of the factors. Defendant stipulated to his prior rape conviction and his juvenile sex offense. Defense counsel emphasized the factors in defendant's favor. In making its decision, the court also addressed the factors and then noted,
[w]hat is of great concern to the Court obviously is the fact that — well, there are two facts here that are of great concern to the Court.
The fact that this is the third time that the defendant is before a judge in some manner being sentenced or sanctioned for offenses that include minors, even though one of them occurred when the defendant himself was a minor.
The other offense that the defendant has been convicted of and was sentenced appropriately for is strikingly similar to the offense that he has been convicted of and stands before the Court for sentencing this morning. I've taken that into consideration.
Also, the fact that the defendant has completed a prior sentence and that sentence included some educational opportunities and some therapeutic opportunities for him with respect to these sexual offenses and the fact that defendant reoffended anyway.
So I have taken all of these things into consideration in determining the proper categorization of this defendant pursuant to the statute and found that the State of Ohio has proven by clear and convincing evidence that the defendant is a sexual predator * * *.
 {¶ 70} When it considers whether the evidence is clear and convincing that a defendant is a sexual predator, the court is not limited to the factors listed. The court properly considered, therefore, defendant's pattern of targeting young adolescent girls when it noted that defendant had been released for a strikingly similar rape of a fourteen-year-old less than five years prior to this offense, and that he was still less than thirty years old at the time of his second offense. The court also noted defendant's failure to benefit from several sexual offender programs. His failure to change his pattern despite all these interventions provided clear and convincing evidence that he presents a continuing danger to society and is properly classified as a sexual predator. This assignment of error is without merit.
 {¶ 71} For his tenth assignment of error, defendant states:
 {¶ 72} The appellant was denied effective assistance of counsel in violation of the sixth and fourteenth amendments to the United States Constitution and Article I, Section 10, of the Ohio Constitution.
 {¶ 73} Defendant claims that he was denied effective assistance of counsel. In order to demonstrate ineffective counsel, defendant must show not only that his counsel's representation fell below the standard of that of competent attorneys, but also that, but for that substandard representation, the outcome of his trial would have been different. Strickland v. Washington (1984), 466 U.S. 668;State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 74} Counsel's first alleged error was stipulating to the victim's medical records, which contained alleged hearsay: that is, the victim's statement that defendant was a friend of the family who performed car repairs. First, defendant fails to show how this information prejudiced him. Second, the victim testified to these facts, and if defendant had any reason to question them, defense counsel could have addressed them when she was on the stand The victim's mother also testified to the same facts. Defendant has failed to show any prejudice from the admission of these records and, therefore, cannot claim counsel was ineffective.
 {¶ 75} Defendant's second allegation states that counsel failed to object to a "large amount of testimony regarding [the victim's] statements to others after the alleged rape." He claims that these statements were inadmissible hearsay and that they served to bolster the state's case by showing that her statements were consistent with her testimony. He first points to three pages of testimony from the mother in which she describes the way the victim told her of the assault. In these three pages, counsel objected three times.
 {¶ 76} Further, the remaining testimony does not contain hearsay. Instead, it describes what the mother did in response to the information, the victim's demeanor at the time, the fact that the mother spoke on the phone with the victim's friend, and that she then called her own mother for advice. Contrary to defendant's claim, counsel effectively blocked hearsay testimony on these pages.
 {¶ 77} Defendant next claims that a page of the victim's testimony was inadmissible hearsay. The victim stated that the girl she had spoken to on the phone was the victim's best friend, described her mother's reaction to the information, and stated that her mother called the police and defendant. None of this is hearsay, much less inadmissible hearsay.
 {¶ 78} Finally, defendant cites a page on which the victim identifies her police statement and confirms that she went to the hospital for medical treatment. Again, this testimony does not contain any hearsay at all, much less inadmissible hearsay.
 {¶ 79} Defendant also claims that counsel was ineffective because he failed to raise the issue of allied offenses as addressed in the sixth assignment of error and the alleged lack of unanimity instruction addressed in the fifth assignment of error. Because we found these assignments of error meritless, counsel was not ineffective in these instances.
 {¶ 80} Counsel was not ineffective and this assignment of error is without merit.
 {¶ 81} For his final assignment of error, defendant states:
 {¶ 82} The trial court erred in violation of Mr. Hawkins' right under the Sixth Amendment to the United States Constitution to be present and represented by counsel at all critical stages of proceedings, and in violation of his right under thefourteenth amendment to the United States Constitution to due process of law when it included the possibility that he would serve a term of post-release control via journal entry, after not having mentioned it at sentencing.
 {¶ 83} Defendant correctly notes that the trial court did not inform him at his sentencing hearing that he would be subject to post-release control. The court did, however, include post-release control in its journal entry. Defendant states that this additional sanction, added outside his presence, violates his right to be present for all stages of the proceeding against him and violates his right to not have his sentence enhanced after the fact.
 {¶ 84} We agree. The Ohio Supreme Court held in Woods v.Telb (2000), 89 Ohio St.3d 504, that the trial judge must inform the defendant that post-release control is or may be part of his sentence. This court later ruled in State v. Finger (Jan. 29, 2003), Cuyahoga App. No. 80691, that even if the statute requires post-release control for the crime, if the trial court fails to inform defendant of it at the sentencing hearing, post-release control must be vacated. The court could not correct by journal entry its failure to advise of post-release control at the oral sentencing. State v. Morrisey (Dec. 18, 2000), Cuyahoga App. No. 77179. Because the state did not appeal this question, the only solution is to remand the matter to correct the journal entry. State v. Fitch, Cuyahoga App. No. 79937, 2002-Ohio-4891, certiorari allowed 2003-Ohio-1189. See, also, State v. Finger,
Cuyahoga App. No. 80691, 2003-Ohio-402. State v. Woodley,
Cuyahoga App. No. 80732, 2003-Ohio-1950, appeal not accepted for review, 2003 Ohio Lexis 2462.
 {¶ 85} Accordingly, we reverse the conviction for digital rape and remand for a new trial solely on this issue. Further, the trial court is hereby ordered to correct the appellant's sentencing journal entry to reflect that post-release control is not a part of appellant's sentence.
 {¶ 86} Affirmed in part, vacated in part.
It is ordered that appellee and appellant split the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
Timothy E. McMonagle, J., Concurs.
John T. Patton,* J., concurs and dissents with separate concurring and dissenting opinion.
[1] R.C. 2945.71 states:
(A) Subject to division (D) of this section, a person against whom a charge is pending in a court not of record, or against whom a charge of minor misdemeanor is pending in a court of record, shall be brought to trial within thirty days after the person's arrest or the service of summons.
(B) Subject to division (D) of this section, a person against whom a charge of misdemeanor, other than a minor misdemeanor, is pending in a court of record, shall be brought to trial as follows:
(1) Within forty-five days after the person's arrest or the service of summons, if the offense charged is a misdemeanor of the third or fourth degree, or other misdemeanor for which the maximum penalty is imprisonment for not more than sixty days;
(2) Within ninety days after the person's arrest or the service of summons, if the offense charged is a misdemeanor of the first or second degree, or other misdemeanor for which the maximum penalty is imprisonment for more than sixty days.
(C) A person against whom a charge of felony is pending:
(1) Notwithstanding any provisions to the contrary in Criminal Rule 5(B), shall be accorded a preliminary hearing within fifteen consecutive days after the person's arrest if the accused is not held in jail in lieu of bail on the pending charge or within ten consecutive days after the person's arrest if the accused is held in jail in lieu of bail on the pending charge;
(2) Shall be brought to trial within two hundred seventy days after the person's arrest.
(D) A person against whom one or more charges of different degrees, whether felonies, misdemeanors, or combinations of felonies and misdemeanors, all of which arose out of the same act or transaction, are pending shall be brought to trial on all of the charges within the time period required for the highest degree of offense charged, as determined under divisions (A), (B), and (C) of this section.
(E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. This division does not apply for purposes of computing time under division(C)(1) of this section.
(F) This section shall not be construed to modify in any way section 2941.401 or sections 2963.30 to 2963.35 of the Revised Code.
* Judge John T. Patton, retired, of the eighth district court of appeals sitting by assignment.