JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Mondrey Jackson ("defendant"), appeals from his convictions and sentences on two counts of felonious assault, and one count of attempted murder, with one-and three-year firearm specifications. For the reasons that follow, we affirm in part, reverse in part and remand.
 {¶ 2} On March 3, 2006, Shaun Woods was working as a bouncer at the Rendezvous Bar in Cleveland, Ohio when he was shot in the eye. Woods identified defendant as the assailant. Defendant was arrested and charged with two counts of felonious assault (counts one and two), illegal possession of a firearm in a liquor permit premises (count three), and attempted murder (count four). The indictment included one-and three-year firearm specifications on counts one, two, and four.
 {¶ 3} At trial, the State presented testimony from various witnesses who were at the Rendezvous Bar on March 3, 2006 at the time Woods was shot. A patron of the bar testified that he met defendant that evening and the two exchanged cell phone numbers with the intention of doing business together in the future. The barmaid and bartender both testified that they served defendant drinks that night and that he appeared intoxicated.
 {¶ 4} The victim (Woods), and James Kidd, who was another bouncer, testified that when defendant was leaving the bar it looked like he was going to hit Woods. Woods reacted by grabbing defendant and forcibly ejecting him from the bar. Defendant landed in the snow outside and began complaining that he was only *Page 4 
trying to give Woods a "high five." The three men argued for a brief period until Woods and Kidd apologized for the misunderstanding and told the inebriated defendant to leave. Defendant began to drive away in a red Honda but turned around and exited his vehicle.
 {¶ 5} Defendant confronted Woods and Kidd again just outside the bar. According to Kidd and Woods, defendant was angry and threatened Woods before he re-entered his car. Kidd watched defendant drive away.
 {¶ 6} Back inside the bar, Woods was told that defendant had said he had a gun. Woods locked the door and moments later, Kidd and Woods felt pounding on the door. When Woods looked out the window, he saw the side of defendant's face and a gun. Woods was shot in the eye.
 {¶ 7} The barmaid called 9-1-1. Woods was taken to the hospital. Despite two surgeries, Woods lost his left eye as a result of the shooting. Woods described his injury and the impact it has had on his life.
 {¶ 8} Detective Alexander of the Cleveland Police Department was assigned to investigate the shooting of Woods. He received a description of the suspect and the suspect's car, and a possible cell phone number for the suspect. Det. Alexander called the cell phone number within 12 hours of the shooting and defendant answered.
 {¶ 9} Defendant appeared not to know why Det. Alexander was calling and indicated that he wanted to press charges against the bouncer who had assaulted *Page 5 
him the previous night. Det. Alexander stated he wanted to discuss a felony investigation with defendant and asked him to come to the police station. Det. Alexander testified that defendant missed several appointments before voluntarily coming to the police station.
 {¶ 10} Det. Alexander further testified that he presented the barmaid and Woods with a photo array. The barmaid identified defendant as a patron of the bar on March 3, 2006. Woods identified defendant as the person who shot him. When asked how sure he was that defendant was the shooter, Woods testified, "I'd put my life on it."
 {¶ 11} Defendant fit the description of the suspect and Det. Alexander discovered that the defendant's live-in girlfriend owned a Maroon Honda that fit the description of the suspect's vehicle. Det. Alexander searched the vehicle and the defendant's residence, where a shotgun and .32 caliber gun were seized. Neither matched the weapon used to shoot Woods. Det. Alexander also recovered 9 millimeter ammunition from defendant, which also did not match the bullet recovered from Woods' eye.
 {¶ 12} The jury returned guilty verdicts on counts 1, 2, and 4, and found defendant not guilty of illegally possessing a firearm in a liquor permit premises. The jury further found the defendant guilty of one-and three-year firearm specifications. The trial court sentenced defendant to eight-year prison terms on each count to run *Page 6 
concurrently but consecutive to a three-year term for the firearm specification. Defendant raises the following four assignments of error for our review.
 {¶ 13} "I. Mondrey Jackson was denied his constitutional right to a fair trial before a jury free from outside influences by the repeated introduction of victim impact evidence during the State's case-in-chief."
 {¶ 14} Defendant maintains that the trial court erred by allowing victim-impact evidence at trial. Specifically, defendant challenges the victim's testimony concerning the extent of his injuries. The victim explained how losing his left eye prevented his maintaining employment and has impacted him in various other aspects such as causing migraine headaches and limiting his ability to help around the house. Defendant argues that this evidence is not probative of whether he committed the indicted offenses but improperly serves to taint and bias the jury, thus violating his right to a fair trial. Defendant relies on Payne v.Tennessee (1991), 501 U.S. 808 and State v. Fautenberry (1995),72 Ohio St.3d 435.
 {¶ 15} In Fautenberry, the Ohio Supreme Court found "that evidence which depicts both the circumstances surrounding the commission of the murder and also the impact of the murder on the victim's family may be admissible during both the guilt and the sentencing phases." Id. at 440; see, also, State v. McKnight, 107 Ohio St. 3d 101, 2005-Ohio-6046, ¶ 98
("Evidence relating to the facts attendant to the offense is `clearly admissible' during the guilt phase, even though it might be characterized as victim-impact evidence.") *Page 7 
 {¶ 16} In this case, defendant was charged with felonious assault and attempted murder. The State was required to prove beyond a reasonable doubt that defendant knowingly caused or attempted to cause "serious physical harm" to Woods. R.C. 2903.11.
 {¶ 17} "`Serious physical harm to persons' means any of the following:
 {¶ 18} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 19} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 20} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 21} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 22} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5).
 {¶ 23} The subject testimony was probative of the element of serious physical harm as that term has been defined by the Ohio Revised Code and therefore was not admitted in error. See State v. King, Cuyahoga App. No. 80596, 2002-Ohio-6220 ¶¶ 24-40.
 {¶ 24} Assignment of Error I is overruled. *Page 8 
 {¶ 25} "II. Mondrey Jackson was deprived of his constitutional right not to incriminate himself when the State admitted testimony of his initial refusal to speak with the police."
 {¶ 26} Defendant maintains that the trial court violated his Constitutional right against self-incrimination by allowing Det. Alexander to testify that defendant had missed some appointments. Det. Alexander also speculated that defendant used this time to dispose of the weapon. Defendant maintains that the testimony was equally improper.
 {¶ 27} In State v. Leach, 102 Ohio St.2d 135, 2004-Ohio-2147, the court addressed whether "pre-arrest, pre-Miranda silence may be used as substantive evidence of an accused's guilt in the State's case-in-chief. The Ohio Supreme Court found relevant the two-part analysis utilized by the Sixth Circuit in Combs v. Coyle (C.A.6, 2000), 205 F.3d 269, which provides "(1) admitting the evidence of pre-arrest silence substantially impairs the policies behind the privilege against self-incrimination; and (2) the government's use of pre-arrest silence in its case-in-chief is not a legitimate governmental practice." Leach,102 Ohio St.2d at 140.
 {¶ 28} In Leach, the court determined that an accused's pre-arrest, pre-Miranda, invocation of his right to counsel was inadmissible as substantive evidence of guilt because it violated his Fifth Amendment rights. Notwithstanding, the court specifically noted that "[the investigating officer's] testimony that he had made an appointment to meet with [the defendant] to discuss the case but that the *Page 9 
appointment was not kept is legitimate." This type of testimony qualified as evidence of the "course of investigation" under the second prong of the Combs analysis.
 {¶ 29} Defendant contends that State v. Hawkins, 104 Ohio St.3d 582,2004-Ohio-7124, establishes that any testimony concerning an accused's pre-arrest, pre-Miranda conduct in failing to keep appointments with law enforcement violates the Fifth Amendment. However, the Ohio Supreme Court in Hawkins merely reversed and remanded for "application ofState v. Leach" without further opinion. This decision was warranted, since the appellate court had, contrary to Leach, found that the Fifth Amendment did not apply at all to pre-arrest, pre-Miranda conduct. SeeState v. Hawkins, Cuyahoga App. No. 82465, 2004-Ohio-855, ¶¶ 58-71. The Ohio Supreme Court notably did not decide the issue but rather directed the court to apply the current law.
 {¶ 30} After careful application of the law to the subject testimony, we conclude that the admission of Det. Alexander's testimony did not violate defendant's constitutional right against self-incrimination. The testimony concerning the missed appointments was admissible to explain the course of investigation. Unlike the testimony found impermissible inLeach, the testimony here did not involve defendant invoking his right to counsel. Conversely, the testimony that defendant had missed appointments is like the testimony the Ohio Supreme Court found to be legitimate in Leach. *Page 10 
 {¶ 31} Det. Alexander's speculation that defendant had ample time to dispose of a weapon did not implicate defendant's Fifth Amendment right against self-incrimination. Although such testimony is arguably improper under Evid.R. 602 and 802, its admission in this case was harmless error. Crim.R. 52(A).
 {¶ 32} Assignment of Error II is overruled.
 {¶ 33} "III. Mondrey Jackson was denied his constitutional right not to be placed in jeopardy two times for the same offense, by his convictions for attempted murder and two counts of felonious assault."
 {¶ 34} Defendant contends that his multiple convictions violated double jeopardy because he maintains that attempted murder and the two counts of felonious assault should merge as being allied offenses of similar import.
 {¶ 35} In determining whether crimes are allied offenses of similar import under R.C. 2941.25(A), courts must assess whether the statutory elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other. State v.Rance, 85 Ohio St.3d 632, 638, 1999-Ohio-291. If the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus. Id. at 638-639. The burden of establishing that two offenses are allied falls upon the defendant. State v. Douse (Nov. 29, 2001), Cuyahoga App. No. 79318.
 {¶ 36} We recently addressed and rejected the argument that attempted murder and felonious assault are allied offenses of similar import inState v. Nicholson, Cuyahoga App. No. 85635, 2005-Ohio-5687. Accordingly, defendant's arguments to the contrary must fail. *Page 11 
 {¶ 37} The State concedes that the trial court incorrectly convicted defendant of two counts of felonious assault in this case. Although the indictment charged defendant with various means of committing felonious assault, defendant committed a single act by shooting Woods. Accordingly, defendant's conviction on both counts was improper and in violation of double jeopardy safeguards. Accordingly, we reverse and remand and direct the trial court to vacate both the finding of guilt and the sentence in one of the felonious assault convictions.
 {¶ 38} Assignment of Error III is sustained in part and overruled in part.
 {¶ 39} "IV. Mondrey Jackson was deprived of his constitutional right to effective assistance of counsel by trial counsel's failure to act zealously on behalf of Mr. Jackson in several areas."
 {¶ 40} In this assignment of error, defendant claims he was denied the effective assistance of trial counsel in several areas.
 {¶ 41} To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Strickland v.Washington (1984), 466 U.S. 668. *Page 12 
 {¶ 42} Defendant first contends his counsel was ineffective by not moving to suppress and/or object to the photo array and the out-of-court identifications made by witnesses.
 {¶ 43} A court is not required to suppress an identification of a suspect unless the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances. In re Henderson, Cuyahoga App. No. 79716, 2002-Ohio-483. Even if the pretrial identification procedure was impermissibly suggestive, an in-court identification is permissible if the State establishes by clear and convincing evidence that the witness had a reliable, independent basis for the identification based on prior independent observations made at the scene of the crime. State v.Tate, Cuyahoga App. 81577, 2003-Ohio-1835, citing In re Henderson, Cuyahoga App. No. 79716, 2002-Ohio-483. No due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation but is instead the result of observations at the time of the crime. Id. In determining whether an identification is reliable, a court must consider (1) the witness's opportunity to view the suspect at the time of the incident, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the witness's certainty when identifying the suspect at the time of the confrontation, and (5) the length of time elapsed between the crime and the identification. State v. Waddy (1992), 63 Ohio St.3d 424, 439. *Page 13 
 {¶ 44} The array at issue has six photos of equal size arranged in two rows with three columns. Defendant maintains that it was unduly suggestive. In defendant's opinion, his head is turned slightly and was "shot in more extreme close-up than any of the other five photographs."
 {¶ 45} There appears nothing "unduly suggestive" about defendant's photograph. Although the lighting is different, it is clear that all the photos have the same background. All depict males with similar characteristics. The differences among the photographs in the subject array are minor and do not make one photograph more suggestive than any of the other photographs.
 {¶ 46} Moreover, there is no reason to conclude that the victim identified defendant's photo due to such subtleties. The victim was quite emphatic that defendant was the person who shot him. The victim had ample opportunity to view the defendant during his multiple confrontations with him that evening. The victim said he saw defendant's face outside the window and saw the gun before he was shot in the eye. The identification was made within days of the event, and the victim did not waiver in his certainty.
 {¶ 47} Since the identification made by Woods was properly admitted, defendant's trial counsel was not ineffective in failing to file a motion to suppress it. Accordingly, defendant was not denied effective assistance of counsel on this basis.
 {¶ 48} Next, defendant maintains his counsel was ineffective by not objecting to the photo array because it was captioned "Euclid Police Department Euclid, Ohio *Page 14 
3/5/2006 * * *." Defendant theorizes that the jurors must have noted this fact and then used it improperly to infer that defendant had been involved in other criminal acts. Yet, in this case the trial court permitted the jurors to submit questions throughout the trial, which it, in turn, posed to the witnesses after consulting both sides. While the jurors asked many questions, there were no questions about the photo array or any concern about its heading.
 {¶ 49} The mere heading, standing alone, does not amount to "other acts" evidence under Evid.R. 404(B) nor can we infer from this record that anyone noted or considered the discrepancy in rendering the verdict. Accordingly, defendant has not shown how he was prejudiced by its admission or that the failure to object to it somehow affected the outcome of his trial.
 {¶ 50} Defendant also cites counsel's failure to object to the evidence that gave rise to his previous assignments of error. As set forth previously, the admission of the victim impact testimony was proper because it was probative of the element of "serious physical harm;" the admission of Det. Alexander's testimony did not violate defendant's Fifth Amendment right against self-incrimination and was otherwise harmless error. Defendant's claims of ineffective assistance of counsel are without merit in those aspects. Finally, attempted murder and felonious assault are not allied offenses of similar import under the law of this district, and the error in convicting and sentencing defendant on two counts of felonious assault rather than a *Page 15 
single count has been sustained and reversed with instructions to vacate the conviction and sentence in one of the two felonious assault convictions.
 {¶ 51} Assignment of Error IV is overruled.
Judgment affirmed in part, reversed in part and remanded.
It is ordered that appellant and appellee share equally the costs herein taxed. The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. Case remanded to the trial court for further proceedings.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 COLLEEN CONWAY COONEY, J., and MELODY J. STEWART, J., CONCUR *Page 1