The STATE of Ohio, Appellee,

v.

OWENS, Appellant.

The STATE of Ohio, Appellee,

v.

PHELPS, Appellant.

[Cite as *State v. Owens* (1993), 91 Ohio App.3d 479.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–920134, C–920215.

Decided Jan. 13, 1993.

**480**

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and Christian J. Schaefer, Assistant Prosecuting Attorney, for appellee.

*Sand & Stidham* and *Chuck R. Stidham,* for appellant Robert Owens.

*Becker, Reed, Tilton & Hastings* and *Howard D. Cade III,* for appellant John Phelps.

*Per Curiam.*

Defendants-appellants, Robert Owens and John Phelps,[1] appeal from the judgment of the Hamilton County Court of Common Pleas in which they were each convicted of one count of rape and one count of robbery following a jury

---

1. Appellant Phelps is also identified in the record as John Philps.

trial.[2]  Owens appeals under case No. C–920134, while Phelps appeals under case No. C–920215.  We have, *sua sponte*, consolidated these appeals for decision.

The state presented evidence during the joint trial that appellants met the twenty-six-year-old female victim during the afternoon of June 1, 1991, at a charity motorcycle event that was held at the Edgewater Park Raceway.[3]  The trio remained together during the course of the evening.  At approximately 12:20 a.m. on June 2, appellants proposed to the victim that they leave the track in Phelps's car to purchase beer and smoke marijuana.  The victim agreed and left the track with appellants.  After purchasing beer at a nearby tavern, appellants drove the victim to a secluded cemetery off of Valley Junction Road.  After all three had exited Phelps's auto, appellants began hitting the victim and kicking her.  Appellants forced the victim to the ground, removed her clothing and continued to beat her until she ceased to resist.  Thereafter, each appellant vaginally raped the victim.  Afterwards, they discussed killing the victim.  Instead, they chose to abandon the victim in the cemetery, taking her purse with them.  Thereafter, the victim made her way to a nearby residence where the occupant summoned the police.  The investigating officers and the occupant of the residence testified that the victim was emotionally upset and crying.  Further, the victim had grass particles on her clothing.

Each appellant testified at trial and claimed that he had consensual sexual relations with the victim during the evening of June 1.  These events occurred, according to appellants, in the parking lot of the tavern, across the street from the race track.  Appellants offered, as alibi evidence, that they were at the home of Phelps's sister, Cathy Taylor, at the time the victim claimed she was later raped and robbed.

As noted above, the jury found appellants guilty of rape and robbery.  Thereafter, the trial court sentenced appellants as appears of record.  On appeal, appellants assert identical assignments of error.  We find each assignment to be without merit and affirm the trial court's judgments.

Each appellant claims, in his first assignment of error, that the guilty verdict is against the manifest weight of the evidence and contrary to law.  While the arguments in support of these assignments refer only to the rape convictions, our disposition of them also pertains to the robbery convictions.  Further,

---

2.  Owens and Phelps were jointly indicted for one count of rape (fellatio), one count of vaginal rape and one count of robbery.  The jury found appellants guilty of the latter two charges.  The jury found Phelps not guilty of the first charge.  It could not reach a verdict on the first count as to Owens, and that rape charge was subsequently dismissed.

3.  Phelps and the victim were previously acquainted.

because of appellants' allegations that the verdicts or judgments are contrary to law, we have reviewed the sufficiency of the evidence presented at trial.

In a criminal case, a verdict cannot be said as a matter of law to be manifestly against the weight or sufficiency of the evidence where substantial evidence is offered by the state in support of all the elements of the offenses charged, and if such evidence was of sufficient probative value to sustain a conviction, the reviewing court will not reverse on the sufficiency or weight of the evidence. *State v. Barnes* (1986), 25 Ohio St.3d 203, 25 OBR 266, 495 N.E.2d 922. In the case *sub judice*, the record demonstrates that the state presented evidence going to all the elements of both rape, under R.C. 2907.02(A)(2), and robbery, under R.C. 2911.02. Consequently, because the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact, *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, we cannot say that the verdicts are against the manifest weight or sufficiency of the evidence or are contrary to law. The first assignment of error of each appellant is overruled.

In each of their second assignments of error, appellants maintain that the trial court erred by admitting evidence that constituted hearsay within hearsay. We do not agree.

During the proceedings below, the state called a rebuttal witness, Vicky Groves, who testified that Owens's sister, Shauna, told her that Cathy Taylor had told Shauna that Taylor had not seen appellants during the early morning hours of June 2. Appellants' objection to this testimony was overruled. Later, during cross-examination by Phelps's counsel, Groves again testified that Taylor's statement was related to her by Shauna. Defense counsel moved the court to strike the testimony and the trial court ordered it stricken. No curative instruction was requested or given. In addition, Groves testified that Owens admitted to her that he had raped the victim.

Appellants urge that it was prejudicial to their cases to allow the jury to hear the foregoing testimony because it negated the trial testimony of Taylor, who had stated that appellants were at her home during the early morning hours of June 2. Our review of the record persuades us otherwise.

Sheriff's Deputy Miller, who first responded to the victim's call to the authorities, testified that he saw Phelps's auto in Cleves, Ohio, at approximately midnight on June 2. He stated that the auto was occupied by two men and a woman. This testimony corroborated the victim's testimony that she and appellants encountered a squad car while driving to the cemetery. Deputy Miller also testified that after interviewing the victim, he went to the cemetery and recovered the victim's house keys and a tampon that had been removed from her prior to the rapes.

As a result of our review of the record, we are convinced that the admission of the testimony of which appellants complain, if error, was harmless beyond a reasonable doubt. See *State v. Bayless* (1976), 48 Ohio St.2d 73, 2 O.O.3d 249, 357 N.E.2d 1035, vacated in part on other grounds *sub nom. Bayless v. Ohio* (1978), 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1155. Accordingly, appellants' second assignments of error are overruled.

■ In their third assignments of error, appellants declare that the trial court erred by precharging the jury and by failing to fully instruct the jury at the conclusion of the closing arguments. The assignments are without merit.[4]

The record reveals that, prior to opening statements by counsel, the trial judge announced that he was a member of the National Judicial College, which, according to the judge, advocated that " * * * maybe the jurors ought to be precharged with what they are looking for before they hear the evidence." The court then proceeded to charge the jury on the law of the case, including all matters on which a jury is generally instructed at the conclusion of closing arguments.[5] Prior to the jury's retiring to deliberate, the court informed the jury:

"All right, ladies and gentlemen of the jury, the Court has precharged you in regard to your duties in this case. It has defined reasonable doubt, has defined evidence both direct and circumstantial. We have told you that you are the sole judges of the facts and the credibility of the witnesses. We have given you instructions—or I have given you instructions on how to weigh the credibility of the witnesses that appeared before you.

"The elements of the counts have been elicited, and definitions have been defined for you previously. You will have a copy of this charge with you in the jury room if you wish to review those matters."

A copy of the court's instructions is not among the trial documents and exhibits that have been transmitted to this court.

No objection to this procedure was lodged by the state or appellants. Appellants now maintain that they were prejudiced by the court's failure to completely charge the jury after closing arguments.

Crim.R. 30[6] provided, at the time of the proceedings below:

---

4. Appellant Owens was granted leave to assert this assignment of error.

5. The court did instruct the jury concerning the alibi evidence and the duties of jurors at the conclusion of closing arguments.

6. Effective July 1, 1992, Crim.R. 30 was amended and now includes an additional statement which we have put in italics:

"(A) Instructions; error; record. At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies of such requests shall be furnished to all other parties at the time of making such requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. The court need not reduce its instructions to writing.

"A party may not assign as error the giving or the failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

"(B) Cautionary instructions. At the commencement and during the course of the trial, the court may give the jury cautionary and other instructions of law relating to trial procedure, credibility and weight of the evidence, and the duty and function of the jury and may acquaint the jury generally with the nature of the case."

In *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, the court held in the first and second paragraphs of the syllabus, respectively:

"1. Before the taking of evidence, a trial court may give preliminary instructions to the jury appropriate for the jury's guidance in hearing the case. A court may also give cautionary instructions throughout the trial. (Crim.R. 30[B], construed.)

"2. After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder. (Crim.R. 30[A], construed.)"

In *Comen*, the trial court, having previously informed counsel, instructed the jury, prior to opening statements, on its duty to follow the law, the significance of objections, its function as factfinder, counsel's duties, the meaning of direct and

---

"(A) Instructions; error; record. At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. *The court also may give some or all of its instructions to the jury prior to counsel's arguments.* The court need not reduce its instructions to writing."

circumstantial evidence, inferences, and the credibility of witnesses and weighing of evidence.

Prior to closing arguments, the court, at the request of both parties, repeated its instruction to the jury on circumstantial evidence. The court denied the defendant's request that it repeat its relevant preliminary instructions prior to submission of the case to the jury. At that time, however, the court told the jury that if while deliberating, it needed certain instructions repeated, such as the credibility of the witnesses or weight to be given to testimony, it could request the court to reread them. At the conclusion of the trial, the defendant was found guilty of several counts of aggravated burglary and receiving stolen property.

On appeal to the Supreme Court, the defendant maintained, *inter alia,* that the trial court erred by failing to repeat all of the relevant jury instructions, including credibility and the weighing of evidence. The court began its analysis by noting that the defendant did not object to the court's splitting of instructions. It then held that, after arguments are complete, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as factfinder. *Comen, supra.* Nevertheless, the court found that the defendant presented no evidence that he was prejudiced by the trial court's failure to repeat all instructions and overruled defendant's proposition of law. *Comen, supra* at 210, 553 N.E.2d at 644.

We find the facts in *Comen* to be substantially similar to those of the cause *sub judice,* except that here the jury supposedly received the trial court's charge, in writing, prior to retiring to deliberate. However, further analysis is necessary.

In *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, the California state constitution permitted a prosecuting attorney to comment on an accused's failure to testify and further permitted the court and jury to consider such failure to testify. The petitioners, who were prosecuted for murder, robbery and kidnapping, did not testify at trial. The prosecuting attorney commented on this fact during his arguments to the jury. Petitioners were convicted and they appealed.

Writing for the court, Justice Black, in reversing the convictions, noted that all fifty states have harmless-error statutes or rules. He further observed that, while California courts have emphasized the concept of overwhelming evidence, the Supreme Court's approach for determining what error is harmless is whether there is a reasonable possibility that the questionable evidence might have contributed to the conviction. *Chapman, supra,* at 23, 87 S.Ct. at 827, 17 L.Ed.2d at 710 (citing *Fahy v. Connecticut* [1963], 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171). The court then stated:

" * * * An error in admitting plainly irrelevant evidence which possibly influenced the jury adversely to a litigant cannot, under *Fahy,* be conceived of as harmless. Certainly error, constitutional error, in illegally admitting highly prejudicial evidence or comments, casts on someone other than the person prejudiced by it a burden to show that it was harmless. It is for that reason that the original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment. There is little, if any, difference between our statement in *Fahy v. State of Connecticut* about 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our *Fahy* case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." (Footnote omitted.) *Chapman, supra,* at 23–24, 87 S.Ct. at 828, 17 L.Ed.2d at 710–711.

In the instant case, it was erroneous for the trial court not to instruct the jury upon the completion of arguments, as required by Crim.R. 30 and *State v. Comen, supra.* However, we conclude, beyond a reasonable doubt, that the procedure employed by the trial court did not contribute to appellants' convictions. The court did give the jury full and complete instructions that were relevant and necessary to its weighing of the evidence and discharging its duty as factfinder, albeit prematurely. However, unlike *Comen,* the record reflects that the trial judge caused his jury instructions to be reduced to writing and sent with the jury when it retired to deliberate. Furthermore, appellants lodged no objection to the entire procedure. Therefore, for this court to reverse the appellants' convictions, we must find that the trial court's procedure regarding its jury instructions was prejudicial. Crim.R. 52(B). We decline to so rule for the reasons we have set forth above.

Accordingly, each of appellants' third assignments of error is overruled.

Each appellant asserts, in his fourth and final assignment,[7] that he was denied effective assistance of counsel. We disagree.

In *State v. Tyler* (1990), 50 Ohio St.3d 24, 37–38, 553 N.E.2d 576, 593, the court stated:

"Allegations of ineffective assistance of counsel are subject to a two-pronged test. The defendant must show that, in light of all the circumstances, counsel's

---

7. As with the third, the fourth assignment of error is advanced by Owens pursuant to leave granted by this court.

representation was professionally unreasonable. *Strickland v. Washington* (1984), 466 U.S. 668, 690–691 [104 S.Ct. 2052, 2065–2066, 80 L.Ed.2d 674, 695]. He must also show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Id.* at 694 [104 S.Ct. at 2068, 80 L.Ed.2d at 697–698]."

Two arguments are offered in support of this assignment. First, appellants maintain that trial counsel was ineffective in failing to object to the trial court's procedure for instructing the jury, as discussed in our disposition of appellants' third assignments of error. This argument fails due to our determination that the procedure did not contribute to appellants' convictions.

The final argument in support of this assignment is that trial counsel were ineffective because they failed to subpoena the victim for purposes of calling her in appellants' case-in-chief. This argument is without merit.

The record discloses that the victim was under a subpoena issued by the state. Under these circumstances, she was a court witness, subject to being called by any party to the instant proceedings. See Crim.R. 17. In fact, the record discloses that the victim was in the hallway immediately outside the courtroom prior to being called by appellants.[8] However, the victim did not respond when summoned. Further, while the victim had been excused from the courtroom by the trial court at the conclusion of her testimony in the state's case, she had not been released from the authority of the subpoena.

Accordingly, the fourth assignments of error are overruled and the judgments of the trial court are affirmed.

*Judgments affirmed.*

HILDEBRANDT, P.J., and SHANNON, J., concur.

GORMAN, J. dissents.

GORMAN, Judge, dissenting.

I agree with the majority that the record does not demonstrate that the trial court's failure to instruct the jury after closing arguments prejudicially affected the trial, but omission of the written jury instructions from the appellate record violates a fundamental element of due process under the Fourteenth Amendment because it deprives the defendants of the right of an effective appeal.

The practice of giving the jury preliminary instructions acquaints it with the applicable law before hearing evidence, but Crim.R. 30 requires that the trial

---

8. The record reflects that an order separating the witnesses was in effect.

court also instruct the jury "after arguments are completed." The rule assumes that the trial judge will do more than simply hand the jury a copy of the written instructions before it retires for deliberations. An oral recitation is implicit from the language in Crim.R. 30 which states that the "court need not reduce its instructions to writing." R.C. 2901.05(B) also states that "the court *shall read* the definitions of 'reasonable doubt' and 'proof beyond a reasonable doubt' * * *." (Emphasis added.)

There is a presumption that the jury followed the trial court's instructions. *State v. Ferguson* (1983), 5 Ohio St.3d 160, 5 OBR 380, 450 N.E.2d 265. As the majority notes, counsel's failure to object is a waiver which precludes an issue from being raised on appeal unless it rises to the level of plain error. *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332. Even had counsel timely objected, however, in light of the trial court's preliminary instructions to the jury, which included all required instructions, and the availability of the written instructions in the jury room, the trial court's failure to conform to the procedure of Crim.R. 30 standing alone is not indicative of prejudice. See *State v. Van Gundy* (1992), 64 Ohio St.3d 230, 233, 594 N.E.2d 604, 607.

The trial court did, however, violate a substantial right afforded by the state involving the defendant's right to one appeal, when it did not comply with the mandate of R.C. 2945.10(G) that the written instructions are "to remain on file with the papers of the case."

Where a state appeal is an integral part of the system for adjudicating the defendant's guilt or innocence, the procedures for review must comport with due process. *Evitts v. Lucey* (1985), 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821. When an appeal is so provided, the state must assure more than a "meaningless ritual." *Douglas v. California* (1963), 372 U.S. 353, 358, 83 S.Ct. 814, 817, 9 L.Ed.2d 811, 815. The very essence of the defendant's right to due process in a criminal case is a fair trial and the right to a fair opportunity to defend against the state's accusations. *Chambers v. Mississippi* (1973), 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297, 312–313. Whether or not the defendant is indigent, a transcript of the trial court proceedings is a prerequisite to review on the merits of an appeal. *Evitts v. Lucey, supra,* 469 U.S. at 393, 105 S.Ct. at 834, 83 L.Ed.2d at 827–828, citing *Griffin v. Illinois* (1956), 351 U.S. 12, 13–14, 76 S.Ct. 585, 588, 100 L.Ed. 891, 895–896. App.R. 9(B) provides for the filing of "a complete transcript or a transcript of the parts of the proceedings not already on file as the appellant considers necessary for inclusion in the record * * *."

A comparison of the trial court's written instructions with its preliminary instructions is impossible on review because, intentionally or unintentionally, the

typed copy was not made part of the appellate record. The result is an incomplete record. The prejudicial effect limiting review is no different in my view than where the trial court is held to commit reversible error by failing to preserve statements for the record ruled upon *in camera* with the defendant's request for discovery pursuant to Crim.R. 16(B)(1)(g). *State v. Billups* (1990), 68 Ohio App.3d 248, 588 N.E.2d 208. Accordingly, noncompliance with R.C. 2945.-10(G) deprived the defendant of due process because it has impaired an adequate or effective first appeal as of right, guaranteed by Section 3, Article IV of the Ohio Constitution, and implemented by the legislature in R.C. 2953.02.

Trial counsel's representation, likewise, "fell below an objective standard of reasonableness," in failing to protect the record for use on appeal. *Strickland v. Washington* (1984), 466 U.S. 668, 687–688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693–694. Although the state's evidence of guilt is persuasive, as the majority observes, under the second tier of the *Strickland* test, there is at least a reasonable possibility that but for counsel's unprofessional errors, the result would have been different. *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 697–698. Realistically, without the written instructions given to the jury, any challenge under the second tier of *Strickland* is speculative at best, but without the written instructions appellate review on the issue is virtually precluded. A meaningful opportunity to appeal requires the state to furnish an indigent defendant a transcript if needed for a full and effective defense or appeal. *Griffin v. Illinois, supra; State ex rel. Greene v. Enright* (1992), 63 Ohio St.3d 729, 590 N.E.2d 1257. In this case the defendant did not receive a part of the record required by R.C. 2945.10(G) and App.R. 9(A).

Because the error is of constitutional dimension, and in the absence of a demonstrable basis for remanding the case to the trial court for the limited purpose of correcting the record under App.R. 9(E), the trial court's judgment should be reversed and the case remanded for a new trial.