JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Paul Smith appeals from his conviction for felonious assault with a firearm specification. For the reasons set forth below, we affirm.
 {¶ 2} On November 19, 1996, defendant and co-defendant Iris Wilson were indicted for felonious assault with firearm specifications pursuant to R.C. 2941.141 and 2941.145. The state additionally charged defendant with repeat violent offender specifications pursuant to R.C. 2929.01(EE) which alleged that he had been convicted of aggravated battery in Florida in 1988 and 1989.
 {¶ 3} The matter proceeded to trial in December 1996. Within this proceeding, the state dismissed the firearm specification pursuant to R.C. 2941.141, and also dismissed its case against Iris Wilson. Defendant was eventually convicted of felonious assault and the remaining firearm specification, and this court affirmed the conviction in State v. Smith
(June 18, 1998), Cuyahoga App. No. 72089. The Supreme Court of Ohio denied defendant leave for further appeal. The Supreme Court of the United States granted certiorari, however, and remanded the matter back to this court for further consideration in light of Lilly v. Virginia
(1999), 527 U.S. 116, 144 L.Ed.2d 117, 119 S.Ct. 1887 (1999). This court affirmed defendant's conviction upon further consideration. See State v.Smith (Dec. 9, 1999), Cuyahoga App. No. 72089.
 {¶ 4} On September 13, 2002, the United States District Court for the Northern District of Ohio, Eastern Division, granted defendant's petition for habeas corpus, concluding that prejudicial error occurred in connection with the admission of Iris Wilson's written statement.
 {¶ 5} The state's retrial of this matter commenced on January 6, 2003, before a jury. At this time, the state and defense counsel stipulated that the repeat violent offender specifications would be bifurcated and tried to the court.
 {¶ 6} The state presented the testimony of Kenyatta Wells, and Cleveland Police Officers Kennedy Jones, Xavier Lynch, Robert Minor, Thomas Lucey, Kevin Freeman, and Thomas Wheeler.
 {¶ 7} Kenyatta Wells testified that on August 1, 1996, he was with Mock Rodgers, a.k.a "Bootsie," and Chantell Jones at a recording studio located at East 55th Street and Marginal Road. They went to the Calypso Bar to get something to eat. As they were returning to the studio in Rodgers' green pickup truck, they stopped at a light on DuPont Avenue. A black, four-door vehicle pulled up and the woman driving the car said, "Hey Bootsie, somebody wants to holler at you." Wells, the driver of Rodgers' pickup, proceeded to the next light. At this point, the same car approached a second time, and the female driver repeated, "Hey Bootsie, somebody wants to holler at you." The passenger then got out of the black car and ran over to the passenger side of the pickup truck. He said, "What's up, mother f*****," then placed his hand into the truck and started shooting. Wells drove off and the black vehicle followed.
 {¶ 8} Wells testified that, as they sped away, Rodgers screamed, "I am hit, I am hit," and identified the assailants as Paul and Iris. Wells drove the truck to the Finast Supermarket located at Superior and Lakeview. Wells realized that he had been shot in the leg, and was taken away by ambulance before speaking with police. Rodgers and Jones did speak with the police, however. Wells further testified that he spent four days in the hospital. Thereafter, on August 9, 1996, he and Rodgers went to the police station and Wells made a statement which provided in relevant part as follows:
 {¶ 9} "I was stopped by the traffic light in the center lane. At this moment the black Park Avenue 4 dr. pulled up on the right of the truck[.] At this moment the female by the name of Iris rolled down her window and stated that someone wanted to talk to Bootsy (sic). I then asked Bootsy (sic) if he knew who the female was as I was pulling the vehicle up. The car then pulled up some more and the female driver stated again that someone wanted to talk to him. He then notice (sic) that the driver was the female name (sic) Iris. At this moment someone exit (sic) the auto on the passenger side and started to walk up on the passenger side of the truck and stated, "What's up mother f*****" and then started to shoot into the truck. At this moment my friends started saying take off take off. I then drove off going to the Finast Store located at Lakeview and Superior.
 {¶ 10} "Q — Do you know who the shooter is?
 {¶ 11} "A — Yes, Paul Smith."
 {¶ 12} Wells identified defendant in court. He testified that he had seen defendant many times at Rodgers' house, that he was present when defendant and Rodgers' discussed business matters concerning their real estate dealings, and that he was aware of problems between the two men. He further testified that he knew Iris, the driver of the black car, through the father of her baby.
 {¶ 13} On cross-examination, Wells acknowledged that in the initial portion of his statement, he said that "someone" shot him. He also claimed that in his previous testimony, he had mistakenly said that he did not know Iris and had never seen her before. He also stated that he could not recall his previous testimony in which he indicated that he did not recognize Iris and Paul after the shooting and that Rodgers told him the identity of the assailants. Cleveland Police Officer Xavier Lynch testified that he was working as a security guard at the Finast Supermarket located at 11906 Superior in Cleveland when Wells, Rodgers and a female rushed in and exclaimed that Wells had been shot. Officer Lynch called for police and EMS to come to the store. Rodgers wanted to get away from the front of the store with its glass windows and said, "The guy is going to kill me." After the police arrived, however, he provided the police with the name of the assailant, and a description of him. He also reported that he was with a woman named Iris and that they were driving a black Park Avenue.
 {¶ 14} Cleveland Police Officer Kennedy Jones testified that at 11:23 p.m., on August 1, 1996, he received a call to respond to the Finast Supermarket at East 119th Street and Superior. Wells had been transported to the hospital when Officer Jones arrived, but Chantell Jones and Rodgers said that a Jamaican named Paul shot Wells at East 110th Street near DuPont.
 {¶ 15} Robert Minor, formerly a crime scene investigator with the scientific investigative unit of the Cleveland Police Department, testified that he processed Rodgers' pickup truck for evidence. Minor photographed the inside and outside of the vehicle. After lifting a rag from the floor of the driver's seat, he observed blood spatter on the rug, and a hole in the floor mat. He also located a pellet on the floor of the driver's side and a spent shell casing on the floor of the passenger's side. Minor further testified that he observed a bullet hole in the exterior of the vehicle, on the passenger side, and the passenger's side window was shattered.
 {¶ 16} Thomas Lucey testified that in August 1996, he worked in the forensic laboratory unit of the Cleveland Police Department. And that he examined the spent bullet slug and copper bullet jacket, which were recovered in this matter. According to Lucey, the slug and the copper jacket both came from a .45 caliber weapon.
 {¶ 17} Cleveland Police Officer Kevin Freeman testified that, based upon information he received in this matter, he was looking for a black man named Paul, and his girlfriend named Iris Wilson. Freeman testified that he knew Wilson had been involved with Kenneth Potts and he stopped her near Potts' house. At this time, Wilson provided him with a driver's license with the name "Renee Davis." Freeman knew that this was not the correct name and Iris was later arrested.
 {¶ 18} Cleveland Police Detective Thomas Wheeler testified that he was assigned to do follow-up investigation in the matter. The initial reports of the incident indicated that the assailant was named "Paul," and did not list a last name. Later, on August 9, 1996, Wheeler met with Rodgers and Wells. Wells provided a narrative of what had happened and Wheeler typed it. Rodgers did not make a statement.
 {¶ 19} Following the presentation of the state's case, defendant rested.
 {¶ 20} The jury convicted defendant of felonious assault and the firearm specification, and the trial court set the repeat violent offender specifications for hearing on February 14, 2003. Defendant's trial counsel subsequently stipulated to the specifications and the trial court found defendant guilty of both repeat violent offender specifications.
 {¶ 21} On February 28, 2003, the court held a sentencing hearing and sentenced defendant to consecutive terms of three years for the firearm specification, eight years for the felonious assault charge, and nine years for the remaining specifications. Defendant now appeals and assigns nine errors for our review.
 {¶ 22} Defendant's first assignment of error states:
 {¶ 23} "The trial court erred in violation of the Sixth andFourteenth Amendments to the United States Constitution, Article I, Section 10 of the Ohio Constitution and Evidence Rules 801 and 802 when it permitted witness Wells to testify about what he learned in conversations with non-witness Rodgers."
 {¶ 24} Within this assignment of error, defendant complains that the trial court committed reversible error when it permitted Kenyatta Wells to testify that defendant and Rodgers had a dispute regarding money. In opposition, the state asserts that this witness was present during various meetings between Rodgers and the defendant and that he testified from his personal knowledge of their dispute.
 {¶ 25} As an initial matter, we note that the admission and exclusion of evidence is within the broad discretion of the trial court and will not be reversed absent an abuse of discretion. State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 343.
 {¶ 26} Evid.R. 602 provides in part that "[a] witness may not testify to a matter unless evidence introduced is sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness."
 {¶ 27} "`Personal knowledge' has been defined as `knowledge of factual truth which does not depend on outside information or hearsay.'" Modonv. Cleveland (1999), Medina App. No. 2945-M, quoting Wall v. FirelandsRadiology, Inc. (1995), 106 Ohio App.3d 313, 335, 666 N.E.2d 235.
 {¶ 28} In this instance, we conclude that the challenged testimony was sufficiently supported by a foundation of personal knowledge in light of Wells' testimony that was present when Rodgers and Wells discussed business and was aware of problems between the two men. Accord State v.Tanner, Muskingum App. No. CT-2003-0005, 2003 Ohio 6866; State v. Sloan,
Cuyahoga App. No. No. 79832, 2002-Ohio-2669; State v. Smith, Montgomery App. No. 18654, 2001-Ohio-1396. The trial court did not abuse its discretion in admitting this brief testimony.
 {¶ 29} Defendant's second assignment of error states:
 {¶ 30} "The trial court erred when it admitted testimony that Iris Wilson and Mr. Smith were romantically involved, that one of Iris Wilson's "boyfriends" had a criminal history and that Iris Wilson presented a false driver's licence."
 {¶ 31} Defendant next complains that the trial court committed reversible error when it permitted the state to introduce prejudicial evidence that, after the shooting, police were looking for Iris Wilson and her boyfriend, the defendant. In opposition, the state maintains that there was a single reference to the fact that defendant and Wilson were boyfriend and girlfriend, and this evidence was supported by the facts and clearly demonstrated that Officer Freeman knew Iris.
 {¶ 32} Evid.R. 401 provides that relevant evidence is evidence tending to make a material fact more or less likely than it would have been without the evidence. Evid.R. 402 provides that evidence that is relevant is admissible. However, pursuant to Evid.R. 403, despite being relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
 {¶ 33} In balancing the probative value against the danger of unfair prejudice, the trial court is vested with broad discretion, and an appellate court should not interfere absent a clear abuse of discretion.State v. Harcourt (1988), 46 Ohio App.3d 52, 546 N.E.2d 214; State v.Hanna, 95 Ohio St.3d 285, 290, 2002-Ohio-2221, 767 N.E.2d 678. In order to find an abuse of that discretion, we must determine whether the trial court's decision to admit or exclude the evidence was arbitrary, unreasonable or unconscionable and not merely an error of judgment. Statev. Xie (1992), 62 Ohio St.3d 521, 584 N.E.2d 715.
 {¶ 34} In this instance, the challenged testimony is as follows:
 {¶ 35} "Q. Who were you looking for?
 {¶ 36} `A. I was looking for a black male named Paul in connection with a felonious shooting.
 {¶ 37} "Q. All right. Anyone else?
 {¶ 38} "A. He also had a girlfriend named Iris Wilson.
 {¶ 39} "Q. Okay. And did you know Iris Wilson?
 {¶ 40} "A. Yes. I knew of her, yeah.
 {¶ 41} "Q. And how did you know of her?
 {¶ 42} MR. WILLIS: Objection.
 {¶ 43} THE COURT: Overruled.
 {¶ 44} "A. Okay. I knew her previously through one of her boyfriends that we had a run-in once before, and —
 {¶ 45} "MR. WILLIS: Objection.
 {¶ 46} "THE COURT: Overruled.
 {¶ 47} "Q. All right. And who was the boyfriend?
 {¶ 48} "A. At the time it was Kenneth Potts.
 {¶ 49} "* * *
 {¶ 50} "Q. What is the name given on that driver's license?
 {¶ 51} "A. Rene Davis
 {¶ 52} "Q. And who handed you that driver's license?
 {¶ 53} "A. Iris Wilson."
 {¶ 54} (Tr. 210-212).
 {¶ 55} We do not accept defendant's contention that the brief references to Iris Wilson's boyfriends unfairly prejudiced defendant, confused the issues, or misled the jury. Rather, this evidence was probative of the fact that Officer Freeman knew Iris and explained his actions in arresting her in connection with this shooting. The admission of this testimony was not error. Cf. State v. Bourdess (Oct. 7, 1999), Cuyahoga App. No. 74842. As to the driver's license, this testimony describes the events surrounding the arrest of Wilson and was probative evidence in support of the state's assertion that she was the driver of the vehicle.
 {¶ 56} Defendant's third assignment of error states:
 {¶ 57} "The trial court erred by failing to comprehensively instruct the jury following closing arguments."
 {¶ 58} Within this assignment of error, defendant complains that the trial court committed prejudicial error in giving a portion of the charge, including the definition of the offenses, prior to closing arguments. The state maintains, however, that the defense did not object to this procedure and that it is permissible under Crim.R. 30(A).
 {¶ 59} We note that the defense raised no objection to the trial court's decision to proceed in this manner. (Tr. 240). In State v.Williford (1990), 49 Ohio St.3d 247, 251, 551 N.E.2d 1279, the Supreme Court stated, "we have repeatedly held that a failure to object before the jury retires in accordance with the second paragraph of Crim.R. 30(A), absent plain error, constitutes a waiver." Accordingly, we will review for plain error. Crim.R. 52(B). "`Plain error is an obvious error * * * that affects a substantial right.'" State v. Yarbrough,95 Ohio St.3d 227, 244, 2002-Ohio-2126, 767 N.E.2d 216, quoting State v.Keith (1997), 79 Ohio St.3d 514, 518, 1997 Ohio 367, 684 N.E.2d 47. An alleged error constitutes plain error only if the error is obvious and, but for the error, the outcome of the trial clearly would have been different. Yarbrough, 95 Ohio St.3d 227 at 244-245. "Notice of plain error is taken with utmost caution only under exceptional circumstances and only when necessary to prevent a manifest miscarriage of justice."State v. Martin, Franklin App. No. 02AP-33, 2002-Ohio-4769.
 {¶ 60} Crim. R. 30(A) provides:
 {¶ 61} "(A) Instructions; error; record. At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of itsinstructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing." (Emphasis added).
 {¶ 62} In State v. Ross (Sep. 20, 2001), Cuyahoga App. No. 78689, this Court considered the appellant's assertion that the trial court's erred when it charged the jury prior to closing argument without repeating the instructions after the closing argument. In finding no prejudicial error, this court stated:
 {¶ 63} "* * * we note that in State v. Baskin (Nov. 9, 2000), Stark App. No. 1999-CA-00240, unreported, the appellate court was confronted with an identical issue to the one presented in this matter. In Baskin,
the trial court gave its instructions to the jury prior to closing argument and charged the jury only with instructions regarding its procedure in deliberation after the conclusion of closing argument. The appellate court held that absent objection, plain error would not be found where there is no challenge to the content of the instructions per se, but rather the challenge is to the order or format by which the instructions were delivered by the court. See, also, State v. Owens
(1993), 91 Ohio App.3d 479, 632 N.E.2d 1301, where the trial court pre-charged the jury with instructions regarding its duties in the trial. In Owens, no objection was lodged and the appellate court found, beyond a reasonable doubt, that the procedure employed by the court did not contribute to the appellant's conviction.
 {¶ 64} "This court finds, based on Comen, Baskin, and Owens, supra, that absent any showing of prejudice, the appellant's argument that the trial court committed reversible error in failing to completely charge the jury at the close of argument is not well founded."
 {¶ 65} Likewise, in this matter, there is no challenge to the content of the instructions per se, but rather challenges the format employed by the lower court. We therefore conclude that, beyond a reasonable doubt, that the procedure employed did not affect the outcome of the trial and did not cause a manifest miscarriage of justice.
 {¶ 66} This assignment of error is without merit.
 {¶ 67} Defendant's fourth assignment of error states:
 {¶ 68} "The failure to include written jury instructions in the record deprived Mr. Smith of his right to due process by impairing his right to an effective first appeal, as of right."
 {¶ 69} Because variation between the oral and written instructions may result in prejudicial error, R.C. 2945.10(G) provides, in relevant part:
 {¶ 70} "Written charges and instruction shall be taken by the jury in their retirement and returned with their verdict into court and remain on file with the paper of the case."
 {¶ 71} In State v. Perry, 101 Ohio St.3d 118, 2004 Ohio 297, the Supreme Court determined that trial court's failure to maintain written jury instructions with the papers of the case in accordance with R.C.2945.10(G) is not structural error. Such error, if not objected to, is subject to the plain error analysis of Crim.R. 52. Id.
 {¶ 72} Under the plain error analysis, the government bears the burden of demonstrating that the error did not affect the substantial rights of the defendant. Id.
 {¶ 73} In this case, the court erred in failing to comply with R.C.2945.10(G). Defendant did not object to the trial court's failure, however, so we review for plain error. The state maintains that the failure to include the written instructions in the record did not result in prejudice to defendant. We agree. The record of the proceedings supports that the trial court fully and completely instructed the jury prior to their deliberations without objection by either party. Both parties had the opportunity to review the court's proposed written instructions and neither party identified an error in the written instructions, nor alleged a variation between the court's oral instructions and the written instructions that had been reviewed previously. Accordingly, we cannot find that the trial court's failure to include the written jury instructions in the record on appeal constituted reversible error. This assignment of error is without merit.
 {¶ 74} Defendant's fifth assignment of error states:
 {¶ 75} "The prosecution violated Mr. Smith's constitutional rights under Article I, Section 10 of the Ohio Constitution, the Fifth Amendment to the United States Constitution and the Due Process Clause of theFourteenth Amendment to the United States Constitution when it engaged in improper closing argument that commented upon the defendant's failure to present a defense and was designed to appeal to the passions of the jury."
 {¶ 76} Within this assignment of error, defendant complains that the prosecuting attorney made comments unsupported by the evidence, when he argued that Rodgers had identified the shooter and driver to the police by their first and last names. He further complains that the prosecuting attorney made ad hominum attacks on defendant's trial counsel by suggesting that his job was to raise reasonable doubt. Finally, defendant complains that the prosecuting attorney improperly commented about defendant's failure to present evidence when by arguing that defendant could have called Rodgers as a witness.
 {¶ 77} In evaluating these claims, we note that the prosecution is entitled to a certain degree of latitude in summation. State v. Smith,87 Ohio St.3d 424, 2000-Ohio-450, 721 N.E.2d 93; State v. Liberatore
(1982), 69 Ohio St.2d 583, 589, 433 N.E.2d 561, 566. The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused.State v. Smith (1984), 14 Ohio St.3d 13, 470 N.E.2d 883, 885. The key "is the fairness of the trial, not the culpability of the prosecutor."Smithv. Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78,87.
 {¶ 78} With regard to defendant's assertion that the prosecuting attorney improperly commented upon matters not in evidence by arguing that several days after the shooting, Rodgers provided the police with the shooter's and the driver's first and last names, we note that the prosecuting attorney argued that immediately following the shooting, Rodgers told the police that the shooter was "Paul," and gave a description of him, and eight days later told Det. Wheeler that the shooter was Paul Smith but was afraid to make a statement. We further note that Det. Wheeler testified that he initially had only the name "Paul" in connection with this matter, but later, on August 9, 1996, after speaking with Rodgers and Wells, he obtained the name "Paul Smith." The prosecuting attorney therefore did not err in arguing that Rodgers provided this information to police. Indeed, defendant's trial attorney also argued," the last name was Smith, which was supplied to him by Wheeler — by Bootsy to Wheeler * * *." (Tr. 300). Moreover, because Rodgers was in the vehicle, accompanied Wells to the police station, and provided information, but did not give a written statement, a jury might logically infer that he was afraid to do so. Accordingly, we hold that this remark did not prejudicially affect substantial rights of the accused. Cf. State v. Calloway (May 26, 1994), Cuyahoga App. Nos. 65431, 65432, 65433. This aspect of the assignment of error is without merit.
 {¶ 79} With regard to the next asserted basis of prosecutorial misconduct, we note that the state argued, "* * * his job, as defense attorney, is to try to show inconsistencies or raise issues that will put doubt in your mind." (Tr. 266). This remark did not prejudicially affect substantial rights of the accused. Cf. State v. Shepherd, Cuyahoga App. No. 81926, 2003-Ohio-3356.
 {¶ 80} Finally, with regard to the comment that defendant did not subpoena Rodgers, the entire comment is as follows:
 {¶ 81} "Mr. Willis talks a lot about Mr. Rodgers. Just so you know, Mr. Willis has the same subpoena power as does the state. So if you wanted to hear from Mr. Rodgers, he could have subpoenaed him here, too." (Tr. 304).
 {¶ 82} The Ohio Supreme Court has held that the State is not prevented from commenting upon the failure of the defense to offer evidence in support of its case. State v. Williams (1986), 23 Ohio St.3d 16, 20,490 N.E.2d 906; State v. Clemons (1998), 82 Ohio St.3d 438, 452,696 N.E.2d 1009. As such, the State's comments did not constitute prosecutorial misconduct. Moreover, this was proper rebuttal to defense counsel's argument. State v. Smith, 87 Ohio St.3d 424, 2000-Ohio-450,721 N.E.2d 93.
 {¶ 83} This assignment of error is without merit.
 {¶ 84} Defendant's sixth assignment of error states:
 {¶ 85} "The trial court improperly sentenced Mr. Smith to additional terms of imprisonment as a repeat violent offender."
 {¶ 86} Defendant next argues that Ohio's repeat violent offender sentencing provision, R.C. 2929.14(D)(2) is unconstitutional on its face because the trial judge makes the findings necessary to enhance the sentence.
 {¶ 87} R.C. 2929.14(D)(2) provides:
 {¶ 88} "(2)(a) If an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a specification of the type described in section 2941.149 of the Revised Code that the offender is a repeat violent offender, the court shall impose a prison term from the range of terms authorized for the offense under division (A) of this section that may be the longest term in the range and that shall not be reduced pursuant to section 2929.20, section 2967.193, or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code. If the court finds that the repeat violent offender, in committing the offense, caused any physical harm that carried a substantial risk of death to a person or that involved substantial permanent incapacity or substantial permanent disfigurement of a person, the court shall impose the longest prison term from the range of terms authorized for the offense under division (A) of this section.
 {¶ 89} "(b) If the court imposing a prison term on a repeat violent offender imposes the longest prison term from the range of terms authorized for the offense under division (A) of this section, the court may impose on the offender an additional definite prison term of one, two, three, four, five, six, seven, eight, nine, or ten years if the court finds that both of the following apply with respect to the prison terms imposed on the offender pursuant to division (D)(2)(a) of this section and, if applicable, divisions (D)(1) and (3) of this section:
 {¶ 90} "(i) The terms so imposed are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.
 {¶ 91} "(ii) The terms so imposed are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense."
 {¶ 92} This court has recently considered a challenge to this statute and found the RVO statute constitutional. State v. Gates (August 5, 2002), Cuyahoga App. 78120, 2002-Ohio-4018; State v. Stanley, Cuyahoga App. No. 81628, 2003-Ohio-3224. The Stanely Court stated:
 {¶ 93} "This court pointed out in Gates that the Apprendi decision permitted the enhancement to a penalty "merely upon the establishment [of] the prior conviction." Id. at p. 24. In contrast, "the imposition of the enhanced penalty [in Ohio's RVO statute] is dependent upon the further findings * * * [that] there is a greater likelihood of recidivism and * * * the crime is so serious that basic prison time will not adequately punish the offense." Id. Apprendi permits state legislatures to empower judges to enhance offender penalties merely upon the establishment of a prior conviction. In contrast to that latitude permitted by Apprendi,
Ohio's RVO statute is more protective of Stanley's rights and, therefore, constitutional. Finally, Stanley's argument is indistinguishable from the argument made by the defendant in Gates; therefore, as in Gates, this assignment of error is overruled."
 {¶ 94} Accordingly, this aspect of the assignment of error is without merit.
 {¶ 95} Defendant next contends that, even if the statute is constitutional, the enhancement cannot be imposed herein because the jury did make the required finding that the offense involved serious physical harm.
 {¶ 96} We note that on January 6, 2003, defendant stipulated that this specification would be tried to the court. Defendant contends that the stipulation is of no consequence because there was no journalized jury waiver of the RVO specification. In State v. Nagel (1999),84 Ohio St.3d 280, 286, 703 N.E.2d 773, the Ohio Supreme Court held that, because a "prior conviction" specification raises an issue which is ancillary to the main charge of a count, a trial court has the authority to try the specification even when the defendant has not signed a valid waiver of his right to a jury trial under R.C. 2945.05. Accordingly, under Nagel, the requirements of R.C. 2945.05 for waiving a jury trial in "criminal cases" do not apply to requests made by defendant under former R.C. 2941.142 or 2941.143 to have the trial judge, in a case tried by a jury, determine the prior-conviction specifications.
 {¶ 97} We further note that in Gates, supra, this court observed thatApprendi exempts prior convictions from its scope, and R.C. 2929.14(D)(2) in essence is an enhancement for prior convictions. Further, as theStanley Court noted, Apprendi permits state legislatures to empower judges to enhance offender penalties merely upon the establishment of a prior conviction. Accordingly, this contention is without merit.
 {¶ 98} Finally, defendant asserts that the RVO enhancement cannot stand because the requisite findings were not made in this matter.
 {¶ 99} The Revised Code defines a repeat violent offender as follows:
 {¶ 100} "`Repeat violent offender' means a person about whom both of the following apply: (1) The person has been convicted of * * * a felony of the first degree * * * a felony of the second degree that involved an attempt to cause serious physical harm to a person or that resulted in serious physical harm to a person. (2) * * * the following applies: (a) The person previously was convicted of or pleaded guilty to, and previously served * * * a prison term for * * * (i) * * * a felony of the first or second degree that resulted in the death of a person or in physical harm to a person * * *." R.C. 2929.01(EE).
 {¶ 101} Here, defendant was convicted of a felony of the second degree, R.C. 2903.11, which resulted in serious physical harm to Wells. Defense counsel also stipulated that defendant had been convicted of two offenses that involved serious physical harm to a person and was imprisoned for those offenses. (Tr. 326-327). The trial court therefore did not err in finding defendant guilty of the RVO specification. AccordState v. Sargent (1998), 126 Ohio App.3d 557, 710 N.E.2d 1170. Later, at the sentencing proceeding, the court outlined defendant's extensive record and then determined that an enhanced sentence was necessary to punish the offender and to protect the public and that a lesser sentence would demean the seriousness of the offense. (Tr. 338). From the foregoing, we conclude that the requisite findings were made. The sixth assignment of error is without merit.
 {¶ 102} Defendant's seventh and ninth assignments of error are interrelated and state:
 {¶ 103} "The trial court erred in imposing a maximum sentence for the crime of felonious assault."
 {¶ 104} "The trial court erred when it imposed a twenty year sentence without determining that an adequate factual basis existed to ensure that the sentence imposed was consistent with that imposed upon similarly situated offenders committing similar offenses."
 {¶ 105} When a trial court imposes the maximum prison term for an offense, it must conduct a statutorily mandated analysis. See State v.Edmonson (1999), 86 Ohio St.3d 324, 715 N.E.2d 131. As part of this analysis, a trial court may only impose the maximum prison term on a defendant who meets one of four criteria. See R.C. 2929.14(C).
 {¶ 106} This statute provides that the longest prison term available may be imposed, in part, "upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 107} Pursuant to R.C. 2929.19(B)(2)(d), the court is then required to state its reasons for imposing such a sentence at the sentencing hearing. State v. Edmonson (1999), 86 Ohio St.3d 324, 715 N.E.2d 131.
 {¶ 108} In this matter, defendant was convicted of felonious assault, a second degree felony. R.C. 2903.11(B). The trial court sentenced defendant to the maximum term, eight years. R.C. 2903.11, 2929.14.
 {¶ 109} As noted previously, the trial court properly found defendant guilty of the RVO specification. (Tr. 328). The court also determined that defendant had an extensive record and that he had previously served a prison term. (Tr. 336). In addition, the court found that this sentence was necessary to punish defendant, and that a lesser sentence would be inadequate to punish defendant and to protect society, and would demean the seriousness of the offense. (Tr. 336-338).
 {¶ 110} In accordance with all of the foregoing, the trial court did not err in imposing the maximum sentence. R.C. 2929.14(C).
 {¶ 111} With regard to defendant's additional contention that the trial court erred in failing to compare this case to other cases in order to determine whether the sentence imposed herein was proportionate to the sentences imposed in other matters, we note that the defense did not provide data at sentencing or before this court to the sentence was inconsistent with other sentences for similar crimes by similar offenders.
 {¶ 112} Moreover, in State v. Hunt, Cuyahoga App. No. 81305, 2003-Ohio-175, this court held that R.C. "2929.11(B) does not require the trial court to engage in an analysis on the record to determine whether defendants who have committed similar crimes have received similar punishments." Rather, the statute indicates the trial court's comments made at the hearing should reflect the court considered that aspect of the statutory purpose in fashioning the appropriate sentence." State v.Edmonson (1999), 86 Ohio St.3d 324 at 326-327; State v. Hunt, supra.
 {¶ 113} In this matter, the trial court clearly considered the statutory purposes of protecting the public from future crime by the offender and others and punishing the offender, and absolutely nothing has been offered from which we may conclude that the sentence is disproportionate to the sentences imposed in other matters. Cf. State v.Sargent (1997), 126 Ohio App.3d 557, 710 N.E.2d 1170.
 {¶ 114} This assignment of error is without merit.
 {¶ 115} Defendant's eighth assignment of error states:
 {¶ 116} "Mr. Smith was denied his right to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendment to the United States Constitution."
 {¶ 117} Within this assignment of error, defendant asserts that his trial counsel was ineffective in failing to object to the prosecuting attorney's arguments, and in failing to challenge the RVO sentencing framework.
 {¶ 118} In order for this Court to reverse a conviction on the grounds of ineffective assistance of counsel, we must find that (1) counsel's performance was deficient and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674,104 S.Ct. 2052.
 {¶ 119} Because we have rejected the claims of error which are the basis for defendant's claim that his trial counsel was ineffective, we must likewise reject the assertion of ineffective assistance of counsel which is premised upon that error. State v. Henderson (1988),39 Ohio St.3d 24, 33, 528 N.E.2d 1237.
 {¶ 120} This assignment of error is without merit.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, P.J., Concurs, Karpinski, J., Dissents (See AttachedDissenting Opinion).